**In re John H. BENNETT.**

**No. 84–Misc. 87.**

United States District Court,
E.D. Wisconsin.

Sept. 4, 1984.

---

Ron Carlson, Estate Adm'r, Milwaukee, Wis., for plaintiff.

Edwin C. Rachow, Milwaukee, Wis., for defendant.

## DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

On June 29, 1984, Judge Dale Ihlenfeldt, a bankruptcy judge for the Eastern District of Wisconsin, filed a document charging that certain conduct by attorney John H. Bennett constituted contempt. Judge Ihlenfeldt seeks to have this court hold Mr. Bennett in contempt of court for Mr. Bennett's alleged violations of the bankruptcy rules and for his failure to obey an order directing him to appear before Judge Ihlenfeldt to discuss the alleged violations.

In response to Judge Ihlenfeldt's "certificate of facts," I issued an order requiring Mr. Bennett to show cause why he should not be held in contempt. A hearing was held in this court on July 19, 1984. Appearances were made at this hearing by Mr. Bennett and his counsel, as well as by a representative of the bankruptcy judges, Mr. Ronald Carlson. Following the hearing, I took the matter under advisement. I now find that the record in this case will not support a finding that Mr. Bennett has committed a contempt of court.

## BACKGROUND

According to the "certificate of facts" filed in this court, the bankruptcy court staff reported to the bankruptcy judges of this district, in a meeting held on December 2, 1983, that in numerous cases filed by Mr. Bennett on behalf of debtors the schedules and accompanying papers had been improperly filled out, and in several cases there had been apparent misrepresentation by Mr. Bennett, particularly concerning payments received from his debtor clients for attorney fees and case filing fees. Following this meeting, the bankruptcy court judges directed the bankruptcy court estate administrator, Mr. Ronald Carlson, to prepare a report concerning these alleged improprieties. The report, based on an examination of chapter 7 cases filed by Mr. Bennett in 1983, lists numerous instances of improperly filled out schedules and other documents filed with the bankruptcy court; it also identifies several possible misrepresentations by Mr. Bennett. Mr. Carlson's report was filed as an exhibit to Judge Ihlenfeldt's certificate of facts.

After reviewing the report, the bankruptcy judges decided to supply Mr. Bennett with a copy of the report and to request that he appear voluntarily to discuss the apparent improprieties. On May 11, 1984, Judge Ihlenfeldt mailed a copy of the report to Mr. Bennett and scheduled a meeting for May 29, 1984, to discuss the report. At Mr. Bennett's request, the May 29 meeting was postponed until June 18, 1984. On the morning of June 18, Mr. Bennett's secretary phoned the court on his behalf and requested that the meeting set for that day be postponed. The meeting was cancelled for that day subject to the condition that Mr. Bennett personally phone the court in the next few days to arrange a new date. Mr. Bennett failed to comply with the court's request.

Having received no further communication from Mr. Bennett, on June 20, 1984, Judge Ihlenfeldt issued a notice and order directing Mr. Bennett to appear on June 25, 1984, to discuss the report. The notice and order was not personally served on Mr. Bennett but was mailed to his office. Mr. Bennett asserts that he had no knowledge of the notice and order until after June 25. Mr. Bennett failed to appear at the June 25 hearing, prompting Judge Ihlenfeldt to file his certificate of facts showing contempt.

## CRIMINAL CONTEMPT

Judge Ihlenfeldt filed his certificate of facts pursuant to Bankruptcy Rule 9020, 11 U.S.C. Under Rule 9020(a)(3):

If it appears to a bankruptcy judge that criminal contempt has occurred but the court is without power under 28 U.S.C. § 1481, to punish or impose the appropriate punishment for the criminal contempt the judge may certify the facts to the district court.

Section 1481 provides that a bankruptcy court may not "punish a criminal contempt not committed in the presence of the judge or warranting a punishment of imprisonment."

Although the bankruptcy court does not expressly indicate whether it believes that Mr. Bennett should be held in civil contempt or criminal contempt, the court acted pursuant to Rule 9020 and § 1481, both of which are concerned specifically with criminal contempt. It is also clear that the nature of the alleged contempt in this case is criminal.

The test for distinguishing civil and criminal contempt has long been established:

> It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish between the two classes of cases. If it is for civil contempt, the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court.

*Gompers v. Buck Stove & Range Co.*, 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911). The overriding purpose of the present proceeding is not to preserve and enforce the rights of the individual private parties affected by chapter 7 cases handled by Mr. Bennett or to compel compliance with orders made to enforce those rights. Instead, the bankruptcy court's primary purpose in initiating this proceeding is to punish Mr. Bennett for his alleged failure to comply with the bankruptcy court's order and rules.

 The district court's power to punish for contempt, whether civil or criminal, is defined in 18 U.S.C. § 401, which provides in relevant part:

> A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—...
> (3) Disobedience of resistance to its lawful writ, process, order, rule, decree, or command.

Criminal contempt requires both a contemptuous act and an intent to commit the contempt. *In re Farquhar*, 492 F.2d 561, 564 (D.C.Cir.1973). The intent requirement is satisfied when a volitional act is done by one who knows or reasonably should be aware that his conduct is wrongful. *U.S. v. Seale*, 461 F.2d 345, 368 (7th Cir.1973). As in any criminal action, the party charged is presumed innocent, and the elements of criminal contempt must be proved beyond a reasonable doubt by the party initiating the contempt proceeding. *Michaelson v. United States ex rel. Chicago, St. Paul, Minneapolis & Omaha Railway Co.*, 266 U.S. 42, 66, 45 S.Ct. 18, 20, 69 L.Ed. 162 (1924); *U.S. v. Greyhound Corp.*, 508 F.2d 529, 531 (7th Cir.1974). The power to punish for contempt, being a drastic sanction, is to be used sparingly and with caution. *Gompers, supra*, 221 U.S. at 451, 31 S.Ct. at 502; *Nelson v. Steiner*, 279 F.2d 944, 948 (7th Cir.1960).

## FAILURE TO OBEY BANKRUPTCY COURT ORDER

The bankruptcy court first asks this court to hold Mr. Bennett in criminal contempt for failing to appear before Judge Ihlenfeldt on June 25, 1984, pursuant to the judge's order of June 20, 1984. The notice and order directing Mr. Bennett to appear to discuss the report concerning his alleged improprieties was not personally served on Mr. Bennett but was mailed to his office. Mr. Bennett asserts that he should not be held in contempt for failure to appear as ordered because he did not have actual notice of the order until after June 25 and because he did not receive timely notice of the hearing as required by Bankruptcy Rule 9006. Aside from the mailing itself, there is no evidence in the present record showing that Mr. Bennett himself received the notice until after June 25, 1984. Unlike the notice for the May 29, 1984, meeting, there was no telephone call from Mr. Bennett, or his secretary, demonstrating that Mr. Bennett was personally aware of the notice of the June 25, 1984, hearing.

Mr. Carlson, appearing on behalf of the bankruptcy judges, argues that in light of Mr. Bennett's requested adjournments of

previous meetings scheduled to discuss the report, Mr. Bennett was under an affirmative duty to ascertain whether an order had been entered directing him to appear before Judge Ihlenfeldt.

 In order to be held in criminal contempt for violating a court order, a party must have *actual* notice of the order. *United States v. Rylander*, 714 F.2d 996, 1003 (9th Cir.1983); *Finney v. Arkansas Bd. of Correction*, 505 F.2d 194, 213 (8th Cir.1974). If Mr. Bennett had been personally served with the order, actual notice could clearly be presumed. I cannot, however, presume actual notice where service is made by mail. I cannot find any evidence in the record which contradicts Mr. Bennett's statement that he had no actual knowledge of the June 20 order prior to the hearing date. The bankruptcy court's claim that Mr. Bennett was under an affirmative duty to ascertain whether an order had been issued simply cannot negate the basic requirement of actual notice. Therefore, I cannot find Mr. Bennett in criminal contempt of court for his failure to appear on June 25, 1984, as ordered by Judge Ihlenfeldt.

### IMPROPRIETIES IN DOCUMENTS FILED WITH BANKRUPTCY COURT

As a second basis for holding Mr. Bennett in criminal contempt, Mr. Carlson's report cites numerous instances of improperly filled out schedules and other documents filed by Mr. Bennett on behalf of his debtor clients. The report, which briefly summarizes the alleged improprieties in sixteen chapter 7 cases filed in 1983 by Mr. Bennett on behalf of his clients, constitutes the sole evidence offered by the bankruptcy judges to support a finding of criminal contempt for the alleged improprieties. Neither Mr. Carlson nor Mr. Bennett addressed the alleged improprieties in these cases at the July 19 hearing in this court.

 The evidence in the record before me clearly establishes that in several of the cases cited in the report the financial disclosure statements and the applications to pay filing fees in installments filed by Mr. Bennett on behalf of his clients were inconsistent with the attorney's fees statements signed and filed by Mr. Bennett. In these cases, the financial disclosure statements and applications to pay filing fees in installments indicate that no amount has been paid for attorney's fees and for filing fees, while the attorney's fees statements assert that the debtor clients have made payments to Mr. Bennett for both attorney's fees and filing fees. These cases reflect carelessness and unprofessional conduct on the part of Mr. Bennett, but they do not satisfy the bankruptcy judges' burden of showing beyond a reasonable doubt that Mr. Bennett has engaged in contemptuous conduct with contemptuous intent.

Other cases cited in the report show inconsistencies between Mr. Bennett's attorney's fees statements and the testimony of his debtor clients at chapter 7 hearings concerning the amounts paid to Mr. Bennett by his clients. The bankruptcy judges have not corroborated this testimony, nor has Mr. Bennett been given the opportunity to confront these clients as witnesses against him in this contempt proceeding. Although these inconsistencies are troubling, they do not constitute evidence sufficient to support a finding of criminal contempt.

Mr. Bennett, in responding to the report, has not contested the existence of the inconsistencies cited above. Rather, Mr. Bennett argues that the clerk of the bankruptcy court had a duty to notify him of any apparent errors in schedules and attorney's fees statements filed with the court. Mr. Bennett also states that the fee statements were prepared by his typist and routinely approved by him for filing without being checked for accuracy. Mr. Bennett further contends that he believed that the statements were correct and that he had no intention to mislead the court.

Therefore, IT IS ORDERED that the application of Judge Ihlenfeldt to find John H. Bennett in criminal contempt of court be and hereby is denied.