**KIMCO LEASING, INC. and Frank A. Webster, Plaintiffs,**

v.

**Kenneth Paul KNEE, Defendant.**

**No. S92–176.**

United States District Court, N.D. Indiana, South Bend Division.

June 30, 1992.

C. David Peebles, Frank A. Webster, Fort Wayne, Ind., for plaintiffs.

Paul D. Refior, Warsaw, Ind., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This case is before the court on appeal from a bankruptcy court decision pursuant to 28 U.S.C. § 158(a).[1] In its September 20, 1991 order, the bankruptcy court found Kimco Leasing, Inc. ("Kimco") and Frank A. Webster ("Webster") in contempt of court for violating the permanent injunction of 11 U.S.C. § 524 and awarded attor-

ney fees and costs in the amount of $3,974.50 to Kenneth Paul Knee ("Knee").

### I. The Facts

The bankruptcy court's findings of facts are not at issue in this appeal. In fact the appellants describe the bankruptcy court's findings of facts as accurate and quote the facts as written by the bankruptcy court. *See*, Appellants' Brief at 2. As said facts are not disputed, this court adopts them here as quoted below:

Knee was employed by J's Steak and Subs (J's) as its operations manager. In that capacity he negotiated a lease agreement with Kimco for various pieces of equipment used in the restaurant business. Under the terms of the lease Kimco was to purchase the equipment from a third party and lease it to J's for five years. At the end of the five years, J's could either return the equipment or exercise its option to purchase the equipment for a nominal sum.

On July 31, 1987, Knee signed the lease, indicating he was signing as operations manager of J's. The lease named J's as "customer" and "lessee." Debtor's Exhibit 34. Neither Knee nor any other party was also referred to on the lease as customer or lessee. Kimco subsequently filed a Uniform Commercial Code financing statement listing the rented equipment as collateral and J's as debtor. Kimco Exhibit A.

Knee's signature appeared on the lease a second time where he signed as a guarantor in his individual capacity. Edward D. Brader, who is the franchisee of J's, also signed as guarantor. Under the terms of the guaranty, Knee and Brader guaranteed lessee's rental payments and performance of all the terms of the lease. The guaranty clause also provided that Kimco could proceed directly against the guarantors without first proceeding against the lessee. Debtor's Exhibit 34.

---

1. 28 U.S.C. § 158(a) provides in pertinent part: (a) The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, ... of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

After the lease had been in operation for some time, J's went out of business and Knee's employment was terminated. J's retained possession of the equipment although it stopped making rental payments. On March 31, 1989, Kimco filed a Complaint on the Lease Agreement in the Allen Circuit Court, cause number 02C01–8903–CP–242, naming Knee and J's as defendants. Kimco, citing J's delinquency and pursuant to the lease's acceleration clause, demanded full payment of principal, interest, taxes, late charges and costs for a total of $28,-384.19 and the immediate return of the leased equipment. Default judgment against Knee and J's was entered on May 1, 1989.

On June 6, 1989, Knee filed his Petition for relief under Chapter 7 of the Bankruptcy Code. On his A–3 schedule Knee listed Kimco as an unsecured creditor for $20,183.40 and stated that the claim was disputed. An Order of Discharge was entered on September 21, 1989. Kimco took no action in the bankruptcy court to lift the automatic stay or except its judgment from Knee's discharge under 11 U.S.C. § 523.

On June 15, 1990, Kimco filed its first Amended Complaint in its state court action. Paragraph I of the amended complaint incorporated the initial complaint against Knee and J's without change. Paragraph II set forth an action for replevin with Kimco asking for possession of the property, and was directed solely against Edward D. Brader. Paragraph III was an action in conversion and named Knee and J's as defendants. Under Paragraph III Kimco asked to be awarded the fair market value of the equipment, which it claimed to be $20,000, and, pursuant to Ind. Code § 34–4–30–1, treble damages, costs and fees. Debtor's Exhibit 4. Knee filed a Motion for Stay of Proceedings which was granted by the state court on July 24, 1990. Debtor's Exhibit 5.

Kimco filed its second Amended Complaint on April 10, 1991. In that complaint Kimco dismissed Knee as defendant on the original count of breach of the lease and added an action in replevin against Mid America Restaurant, Inc., whom Kimco believed had possession of the restaurant equipment. Kimco reiterated its claim for conversion against Knee in the third paragraph, continuing to ask for an award of the fair market value of the equipment and treble damages. Kimco's Exhibit C. On May 3, 1991, the state court reaffirmed its earlier order staying the state court action and expressly ordered Kimco and its attorney to cease further prosecution of its claim against Knee in personam. Debtor's Exhibit 33.

Knee filed a Motion to Reopen Bankruptcy Proceedings on August 7, 1990, which was granted by this Court on August 14, 1990. On July 23, 1990, Knee filed his Motion for Contempt against Webster, counsel for Kimco, and Kimco. Knee alleged that Kimco and Webster "violated the federal court order … which prohibits the collection of discharged debts." Debtor's Motion for contempt at 10. Knee asks this Court to find Kimco and Webster in contempt of court and for relief: (1) fine them each $10,000, (2) hold them jointly and severally liable for Knee's attorney fees and costs incurred as a result of the state court action, and (3) enjoin them from further contact with or action against Knee. Additionally, Knee asks for a stay of the state court case.

Kimco and Webster have responded in opposition to Knee's motions claiming that the state court action is not prohibited by the Bankruptcy Code's automatic stay and supporting this claim with the following two arguments. They first argue that Kimco's secured status was not affected by Knee's bankruptcy proceeding and, therefore, Kimco was entitled to take action to recover its property. Secondly, conversion of the equipment would be a criminal act under Indiana law, which also allows a party injured by a criminal act to bring a civil action to be compensated for its loss. [See, I.C. §§ 35–43–4–3 and 34–4–30–1.] Since 11 U.S.C. § 362(b)(1) allows the commence-

ment or continuation of a criminal action against a debtor, Kimco's civil action, which has a criminal basis, is also allowed.

Based upon these facts, the bankruptcy court charged the appellants with civil contempt and awarded attorney's fees and reasonable costs on September 20, 1991. Then, on October 1, 1991, the appellants asked the bankruptcy court to amend or alter its decision. The bankruptcy court heard oral argument on the motion to reconsider together with a motion from the appellee for further sanctions on January 9, 1992. On January 29, 1992, the bankruptcy court overruled the motion to alter or amend and ordered additional sanctions of $300.00 against appellant Frank Webster.

## II.

Kimco and Webster now appeal the finding of contempt based upon the bankruptcy court's conclusion that they violated the post-discharge injunction provisions of § 524(a)(3) of the Bankruptcy Code, 11 U.S.C. § 524(a)(3). Appellants Kimco and Webster filed their notice of appeal on February 4, 1992 and their appellate brief on April 1, 1992. Appellee Knee filed his brief on April 23, 1992, and the appellants filed their reply brief on May 6, 1992.[2] An oral argument on the issues was heard on June 3, 1992. Following the hearing, the matters were taken under advisement. The appellants submitted a Statement of Additional Authority on June 5, 1992. The court, having heard argument and being fully briefed on the issues, now AFFIRMS the bankruptcy court.

### III. Summary of the Issues Presented

The issues presently before this court on appeal are as follows:

1. Whether the bankruptcy court had jurisdiction over a question of civil contempt posed in response to the filing of a post-discharge lawsuit given the injunction provisions of 11 U.S.C. § 524.

2. Whether the bankruptcy judge committed error in finding that the appellants' acts violated the applicable injunction provisions of 11 U.S.C. § 524.

3. Whether the appellants' acts were sufficient grounds to find the appellants in contempt.

4. Whether the bankruptcy judge erred in imposing sanctions, including Rule 11 sanctions.

The court will address each of these issues in accordance with the standard of review set out next.

### IV. The Standard of Review

The standard of review this court must follow when reviewing factual findings of the bankruptcy court is set forth in Bankruptcy Rule 8013 which provides:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Fed.R.Bk.P. 8013 (1991). While findings of fact are reviewed under the "clearly erroneous" standard, the bankruptcy court's conclusions of law must be reviewed *de novo*. *Woodbridge Place Apartments v. Washington Square Capital*, 965 F.2d 1429, 1434 (7th Cir.1992); *Oneida Tribe of Indians v. State of Wisconsin*, 951 F.2d 757, 760 (7th Cir.1991); *Calder v. Camp Grove State Bank*, 892 F.2d 629, 631 (7th Cir.1990).[3] Applying these standards, the

---

2. Appellants filed a supplement to their reply brief on May 8, 1992.

3. Naturally, there are exceptions to these basic premises. Particularly the court notes the mandates of Bankruptcy Rule 9033. It provides in pertinent part:

> (a) **Service.** In non-core proceedings heard pursuant to 28 USC § 157(c)(1), the bankrupt-

cy judge shall file proposed findings of fact and conclusions of law....

> (b) **Objections: Time for Filing.** Within 10 days after being served with a copy of the proposed findings of fact and conclusions of law a party may serve and file with the clerk written objections which identify the specific proposed findings or conclusions objected to

court will now address each of the four issues presented in turn.

## V. Jurisdiction of the Bankruptcy Court Over the Question of Civil Contempt

First, the court addresses whether the bankruptcy court had jurisdiction over a question of civil contempt posed in response to the filing of a post-discharge lawsuit given the injunction provisions of 11 U.S.C. § 524. As this is a question of law, the court will review the bankruptcy decision *de novo* to determine whether the bankruptcy court's decision is contrary to law.

On its face, 11 U.S.C. § 524 does not provide for jurisdiction. However, the appellees argue that jurisdiction is conferred on the bankruptcy court to hold a contempt hearing in 11 U.S.C. § 105(a) and Bankruptcy Rule 9020. Section 105(a) provides for broad power:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent any abuse of process.

Bankruptcy Rule 9020 provides, in part:

> **(a) Contempt Committed in Presence of Bankruptcy Judge.** Contempt committed in the presence of a bankruptcy judge may be determined summarily by a bankruptcy judge. The order of contempt shall recite the facts and shall be signed by the bankruptcy judge and entered of record.
>
> **(b) Other Contempt.** Contempt committed in a case or proceeding pending before a bankruptcy judge, except when determined as provided in subdivision (a) of this rule, may be determined by the bankruptcy judge only after a hearing on notice. The notice shall be in writing, shall state the essential facts constituting the contempt charged and describe the contempt as criminal or civil and shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense. The notice may be given on the court's own initiative or on application of the United States attorney or by an attorney appointed by the court for that purpose. If the contempt charged involves disrespect to or criticism of a bankruptcy judge, that judge is disqualified from presiding at the hearing except with the consent of the person charged.
>
> **(c) Service and Effective Date of Order; Review.** The clerk shall serve forthwith a copy of the order of contempt on the entity named therein. The order shall be effective 10 days after service of the order and shall have the same force and effect as an order of

and state the grounds for such objection. A party may respond to another party's objections within 10 days after being served with a copy thereof. A party objecting to the bankruptcy judge's proposed findings or conclusions shall arrange promptly for the transcription of the record, or such portions of it as all parties may agree upon or the bankruptcy judge deems sufficient, unless the district judge otherwise directs.

**(d) Standard of Review.** The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objections has been made in accordance with this rule. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions.

Fed.R.Bk.R. 9033. This court notes that in other cases of a similar nature the argument has sometimes been made that the bankruptcy contempt proceedings were non-core proceedings. *See, I.A. Durbin, Inc. v. Jefferson Nat. Bank,* 793 F.2d 1541 (11th Cir.1986); *In re Omega Equipment Corp.,* 51 B.R. 569 (D.C.D.C.1985). However, as no party in this case has made the argument that the bankruptcy court proceedings at issue were non-core proceedings this court will not discuss or apply the standards set out in Bankruptcy Rule 9033. Furthermore, the appellants have not proceeded according to the mandates of Rule 9020(c) which calls for a filing of objections as provided for in Rule 9033(b) to bring this court's review of a bankruptcy court's contempt order within the standard required by Rule 9033(d).

contempt entered by the district court unless, within the 10 day period, the entity named therein serves and files objections prepared in the manner provided in Rule 9033(b). If timely objections are filed, the order shall be reviewed as provided in Rule 9033.

While the appellants have chosen not to pursue their appeal in accord with the provisions set out in Rule 9020, that does not detract from the bankruptcy court's power to exercise proceedings pursuant to Rule 9020. The bankruptcy judge cannot be required to second guess what the strategies of attorneys will be on appeal. Still, the language of 11 U.S.C. § 105(a) and Bankruptcy Rule 9020 does not completely address the issue of whether a bankruptcy court has contempt power. In fact, several courts have grappled with this very question and the constitutional issues it presents. However, an exhaustive search by this court has found that the Court of Appeals for the Seventh Circuit has not addressed this issue. Thus, this court is bound to "give most respectful consideration to the decisions of the other courts of appeals and follow them whenever [it] can." *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1123 (7th Cir.1987).

Appellate courts have disagreed as to whether bankruptcy judges have contempt power. In fact of the four courts of appeals which have addressed this issue, two have found that bankruptcy courts have contempt power and two have found that they do not. A brief survey of their conclusions follows.

The appellants cite *In re Sequoia Auto Brokers Ltd, Inc.*, 827 F.2d 1281 (9th Cir. 1987) for the proposition that the bankruptcy court lacked jurisdiction. The Ninth Circuit reasoned that because bankruptcy courts are not article III courts, "bankruptcy judges have jurisdiction to exercise the contempt power only if they have a statutory basis for that authority." *Id.*, at 1284.

The *Sequoia* court then reasoned to the conclusion that no statutes, either expressly or impliedly, "conferred the civil contempt power on bankruptcy judges." *Id.*, at 1291.

The appellants also cite *In the Matter of Hipp, Inc.*, 895 F.2d 1503 (5th Cir.1990) to further support their argument that the bankruptcy court lacked jurisdiction. However, the *Hipp* decision concerned the criminal contempt power of bankruptcy courts. Criminal contempt powers and civil contempt powers cannot be equated. "Civil contempt orders serve either or both of two purposes: (1) to compel or coerce obedience of a court order; and (2) to compensate parties for losses resulting from the contemptor's [sic] non-compliance with a court order." *In re Skinner*, 917 F.2d 444, 447 n. 2 (10th Cir.1990) *quoting Gibbons v. Haddad (In re Haddad)*, 68 B.R. 944, 952 (Bankr.D.Mass.1987); *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949). With respect to criminal contempt, the *Hipp* decision points out that "convictions for criminal contempt are indistinguishable from ordinary criminal convictions and that criminal contempt proceedings are 'criminal in their nature has been constantly affirmed.' Criminal, unlike civil, contempt requires a willful, contumacious or reckless state of mind." *In the Matter of Hipp*, 895 F.2d at 1509 (citations omitted).[4] The question before this court concerns civil contempt only. As such the court does not find precedent concerning criminal contempt persuasive. Furthermore, this court expresses no opinion as to the criminal contempt powers of bankruptcy courts.

For the proposition that the bankruptcy court had contempt power, the appellees cite *In re Skinner*, 917 F.2d 444 (10th Cir.1990). The Tenth Circuit, after performing an analysis very similar to that undertaken by the Ninth Circuit in its *Sequoia* opinion, has found that since district

---

**4.** Other courts have noted the difference between civil contempt and criminal contempt. "Civil contempt is a refusal to do an act the court has ordered for the benefit of a party; the sentence is remedial. Criminal contempt is a completed act of disobedience; the sentence is punitive to vindicate the authority of the court." *In re Sequoia Auto Brokers Ltd.*, 827 F.2d 1281, 1283 n. 1 (9th Cir.1987) *citing Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911).

courts retain *de novo* review of the bankruptcy court's findings of facts and conclusions of law, the delegation of civil contempt power to the bankruptcy courts by 11 U.S.C. § 105(a) does not offend the Constitution as in violation of the separation of powers. *Id.*, at 450.

The appellees also cite *In re Walters*, 868 F.2d 665 (4th Cir.1989) to bolster their position that the bankruptcy court had contempt power. In *Walters*, the Court of Appeals for the Fourth Circuit relied on the language of 11 U.S.C. § 105(a) to find that a bankruptcy court had contempt power. The language of § 105(a) in effect at the time contempt was entered in that case read as follows:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

*In re Walters*, 868 F.2d at 669. Based upon that language the *Walters* court reasoned:

> We see no reason to read into this language anything other than its plain meaning that a court of bankruptcy has authority to issue any order necessary or appropriate to carry out the provisions of the bankruptcy code.

*Id.* In 1986, 11 U.S.C. § 105(a) was amended in a manner which makes the argument in favor of finding that bankruptcy courts do have contempt power even stronger. The 1986 amendment added the following sentence to the language just quoted:

> No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

Additionally, the *Walters* court addressed the fact that its decision deviated from the Ninth Circuit's *Sequoia* opinion. However the Fourth Circuit was more convinced by the "plain language" of the statute than the reasoning in *Sequoia*. *In re Walters*, 868 F.2d at 669. In its *Sequoia*

decision, the Ninth Circuit relied heavily upon *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). However, the Fourth Circuit was not convinced that *Northern Pipeline* required the finding that bankruptcy courts lack contempt power. The Fourth Circuit reasoned that

> [i]f Congress can constitutionally create legal presumptions, assign burdens of proof and prescribe legal remedies for Article I courts, it seems to follow that it can constitutionally grant them the power to enforce their lawful orders through civil contempt. Determining if a party has committed civil contempt involves essentially only consideration of whether the party knew about a lawful order and whether he complied with it. Such a determination does not involve private rights under non-bankruptcy law and does not offend the Constitution, even under the plurality view in *Northern Pipeline*. It follows that we are of opinion the delegation of civil contempt power to the bankruptcy courts by 11 U.S.C. § 105(a) does not offend the Constitution as in violation of separation of powers.

*In re Walters*, 868 F.2d at 670.

Given the language of 11 U.S.C. § 105(a), this court is most persuaded by the reasoning and conclusions of the Tenth and Fourth Circuits. Thus, this court finds that the bankruptcy court had jurisdiction over the question of civil contempt posed in response to the filing of a post-discharge lawsuit given the injunction provisions of 11 U.S.C. § 524.

**VI. The Violation of 11 U.S.C. § 524**

■ Next, this court will discuss the second issue raised on appeal—whether the bankruptcy judge committed error in finding that the appellants' acts violated the applicable injunction provisions of 11 U.S.C. § 524. Assessing the appellants' acts is a fact finding determination and this court may not disturb the bankruptcy court's findings unless such findings are clearly erroneous. The standard governing review is set forth in Bankruptcy Rule 8013. Fed. R.Bk.P. 8013 (1991); and *see, Calder*, 892

F.2d at 631. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Furthermore,

[t]his standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently.... Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous.

*Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–574, 105 S.Ct. 1504, 1511–1512, 84 L.Ed.2d 518 (1985); *Daniels v. Essex Group, Inc.*, 937 F.2d 1264, 1268 (7th Cir.1991); *Comark Merchandising, Inc. v. Highland Group, Inc.*, 932 F.2d 1196, 1200–1201 (7th Cir.1991).

As stated previously neither party disputes the facts of this case as stated by the bankruptcy report and quoted earlier in this opinion. Given the facts as stated, this court cannot find that the bankruptcy court was clearly wrong in its decision that the acts of the appellants violated the applicable injunction provisions of 11 U.S.C. § 524.

## VII. Findings Supporting Contempt Charges

 The third issue that the appellants raise on appeal is whether the appellants' acts were sufficient grounds to find the appellants in contempt. As this is a question of law, the court will review the bankruptcy decision *de novo* to determine whether the bankruptcy court's decision is contrary to law. To support a finding of contempt, the moving party must establish that an order of the court was in effect, the defendant knew of the order, and the defendant failed to comply with the order. Civil contempt must be proven by clear and convincing evidence. *Rototron Corp. v. Lake Shore Burial Vault Co.*, 553 F.Supp. 691, 699 (E.D.Wis.1982), *aff'd*, 712 F.2d 1214 (7th Cir.1983); *Lakefield Telephone Co. v. Northern Telecom, Inc.*, 696 F.Supp.

413, 423 (E.D.Wis.1988); *In the Matter of Berryhill*, 127 B.R. 427, 429 (Bkrtcy. N.D.Ind.1991). Under the bankruptcy rules, a petition for relief filed under 11 U.S.C. § 301 invokes the automatic stay of § 362(a). At discharge, the automatic stay is terminated. However, the order of discharge operates as a permanent injunction pursuant to 11 U.S.C. § 524, which provides in relevant part:

(a) A discharge in a case under this title—

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and

(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case....

As stated by the bankruptcy court and undisputed here, the parties agree that Knee's personal liability as guarantor was discharged in bankruptcy. Knee's discharge of September 21, 1989 permanently enjoined Kimco from attempting to collect on its pre-petition judgment or taking any action to recover a debt which had been a personal liability of Knee's prior to his bankruptcy. Knee listed Kimco as an unsecured creditor, and Kimco has not argued that it failed to receive notice of the discharge. Thus, it is established that a permanent injunction against the enforcement of all discharged debts was in place and that Kimco and Webster were aware of the injunction. Thus, to find that the appellants' acts sufficed to satisfy a charge

of contempt, the only remaining question for this court is whether Kimco's state court action violated 11 U.S.C. § 524.

In Kimco's complaint and amended complaint filed at the state court level its claim against Knee was for conversion and included a prayer for money damages. The bankruptcy court accurately stated that Kimco could have repossessed the property or filed an *in rem* action to recover possession at any time, notwithstanding the bankruptcy proceeding. However, Kimco could not, as it attempted to do at the state level, attempt to collect money damages from Knee without being in violation of § 524. Thus, this court finds that the bankruptcy court's charging appellants Kimco and Webster with contempt was not contrary to law.

### VIII. Attorney's Fees as Sanctions for Contempt

 Finally, the appellants argue that the bankruptcy judge erred in imposing sanctions, including Rule 11 sanctions. This court disagrees. Generally the so-called "American Rule" governs the awarding of attorney's fees in the federal courts. That rule provides that "attorney's fees 'are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor.'" *F.D. Rich Co. v. United States, Industrial Lbr. Co.,* 417 U.S. 116, 126, 94 S.Ct. 2157, 2163, 40 L.Ed.2d 703 (1974) (citations omitted). "The American Rule has not served, however, as an absolute bar to the shifting of attorney's fees even in the absence of statute or contract." *Id.,* at 129, 94 S.Ct. at 2165. Three exceptions to the "American Rule" have evolved:

(1) the litigant recovers a fund for the benefit of others;

(2) the losing party acts "in bad faith, vexatiously, wantonly, or for oppressive reasons";

(3) the defendant willfully disobeyed a court order.

*Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 257–259, 95 S.Ct. 1612, 1621–1622, 44 L.Ed.2d 141 (1975). It is the third exception that applies to this case. This court, as stated above, agrees that the finding of contempt by the bankruptcy court was appropriate. This court also concludes that the awarding of attorney's fees based on the finding of contempt is appropriate here.

 Furthermore, it cannot be said that the assessment of attorney fees in the amount of $300.00 as Rule 11 sanctions pursuant to the *Motion to Alter or Amend* was contrary to law. The Motion to Alter or Amend, as the bankruptcy court recognized, was merely a recitation of some previous arguments filled with unsupported conclusive statements.

Finally, this court notes that the appellants raise no issue relating to the amount of the attorney's fees and costs awarded. Thus, the amounts awarded by the bankruptcy court shall not be disturbed.

### IX.

For the foregoing reasons, the decision of the bankruptcy court is AFFIRMED. IT IS SO ORDERED.