In re MAYEX II CORPORATION, Debtor.

MAYEX II, Plaintiff,

v.

DU–AN PRODUCTS, INC., et al., Ano–Lume, Inc., R & R Carting Disposal, Defendants.

Bankruptcy No. 90–43222–2–11.

Adv. Nos. 92–4198–2–11, 92–4057–2–11 and 92–4060–2–11.

United States Bankruptcy Court, W.D. Missouri.

Feb. 13, 1995.

---

David D. Ferguson, Kevin J. Odrowski, McDowell, Rice & Smi, Kansas City, MO, for Estate Representative.

Frank J. Flacavento, Wayne, NJ, for Du–An Products Co.

Gary A. Lieberman, New York City.

## ORDER DISMISSING MOTION FOR TURNOVER OF PROPERTY OF THE ESTATE UNDER 11 U.S.C. § 542(b) AND DENYING MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT

FRANK W. KOGER, Chief Judge.

This matter is before the Court on the "Motion for Turnover of Property of the Estate Under 11 U.S.C. § 542(b) or, in the Alternative, Motion for Order to Show Cause why Defendants Should not be Held in Contempt" filed by McDowell, Rice & Smith, P.C. as the Estate Representative for the bankruptcy estate of Mayex II Corporation, f/k/a Grant Industries, Incorporated, d/b/a Grant Hardware Company, (McDowell). The motion originally involved five defendants from five separate adversary proceedings: Ano–Lume, Inc., Adv.Proc. No. 92–4057; Du–An Products Co., Inc., Adv.Proc. No. 92–4198; R & R Carting Disposal, Inc., Adv.Proc. No. 92–4060; National Drum & Barrel, Inc., Adv.Proc. No. 92–4054; and Gene Baker Associates, Inc., Adv.Proc. No. 92–4347. After McDowell filed its motion, National Drum satisfied the judgment that was the object of the motion and McDowell withdrew the motion as to Gene Baker. The remaining defendants are Ano–Lume, Du–An Products, and R & R Carting. A hearing was held on January 3, 1995. The foregoing defendants did not appear at the hearing. The Court has read the brief submitted by McDowell in support of its motion, has conducted its own independent research, and is now ready to rule.

### FACTS

In 1992, McDowell filed separate adversary proceedings against Ano–Lume, Du–An Products, and R & R Carting pursuant to 11 U.S.C. § 547 seeking in each action to "recover money preferentially transferred to the Defendants." Ano–Lume is in California, Du–An Products is in New Jersey, and R & R Carting is in New York. On April 7, 1992, the Court entered default judgment against Ano–Lume in the sum of $3866 plus costs and interest, and against R & R Carting in the sum of $6659 plus costs and interest. On July 28, 1992, the Court entered default judgment against Du–An Products in the sum of $78,678 plus costs and interest.

The judgments against each defendant remain unsatisfied. Writs of execution issued in July 1994 against the defendants have been returned unsatisfied. On September 7, 1994, the Court ordered each defendant to appear, through its chief officer, before the Court on October 21, 1994, to be examined under oath concerning each defendant's means of satisfying the judgment. McDowell filed certificates of mailing in which it stated that it sent a copy of the Court's September 7, 1994, order to each defendant by certified mail and by regular mail on September 9, 1994. McDowell has not filed return receipts, if any, with the Court.

The debtor examinations proceeded as scheduled. The defendants failed to appear.

On November 16, 1994, McDowell filed the present motion. McDowell requests that the Court order the defendants pursuant to 11 U.S.C. § 542(b) to turn over to the bankruptcy estate an amount of money sufficient to satisfy the respective judgments entered against them. McDowell further requests that "in the event any Defendant claims an inability to turn over the full outstanding balance on the judgment … the Court … order the Defendants to show cause why

they should not be held in contempt for failing to comply with the Court's prior debtor examination Order." Lastly, McDowell requests that the Court order each defendant to pay $750 to the bankruptcy estate to compensate the estate for its loss in having to enforce the Court's debtor examination orders.

McDowell mailed copies of the motion to each defendant on November 16, 1994. McDowell filed certificates of mailing in which it stated that on December 2, 1994, it sent to each defendant by regular mail a copy of the notice of the hearing on its motion, notifying each defendant that the hearing was scheduled for January 3, 1995.

*Turnover pursuant to 11 U.S.C. § 542(b)*

■ Here, McDowell requested relief under section 542(b) by motion. "A turnover action is an adversary proceeding which must be commenced by a properly filed and served complaint. Bankruptcy Rule 7001." *In re Perkins,* 902 F.2d 1254, 1258 (7th Cir.1990). "A turnover proceeding commenced by motion rather than by complaint will be dismissed ... and a turnover order entered in an action commenced by motion will be vacated." *Id.* *See In re Dillon,* 148 B.R. 852, 853 (Bankr.E.D.Tenn.1992); *In re Wheeler Technology, Inc.,* 139 B.R. 235, 240 (9th Cir. BAP 1992); *In re Ace Indus., Inc.,* 65 B.R. 199, 200 (Bankr.W.D.Mich.1986); *In re Riding,* 44 B.R. 846, 859 (Bankr.D.Utah 1984). *Cf. In re Camdenton United Super, Inc.,* 140 B.R. 523, 526 (Bankr.W.D.Mo.1992) (The Trustee must file an adversary proceeding pursuant to Fed.R.Bankr.P. 7001 before the court will consider propositions raised under section 543, which deals with turnover of property by a custodian.).

The Court cannot address the section 542 issues raised by McDowell's motion. McDowell's motion for turnover is dismissed.

*Contempt for failure to appear at debtor examinations*

Fed.R.Bankr.P. 7069 provides that Fed. R.Civ.P. 69 is applicable in adversary proceedings. Rule 69 provides in relevant part:

Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

McDowell obtained orders from this Court to conduct debtor examinations pursuant to the authority of Mo.Rev.Stat. § 513.380 (1994) and Missouri R. of Civ.P. 76.27. Section 513.380 provides in relevant part:

1. Whenever an execution against the property of any judgment debtor, individual or corporate, ... shall be returned unsatisfied ... the judgment creditor ... may ... be entitled to an order by the court rendering such judgment, requiring the judgment debtor or, in the case of a corporate judgment debtor, its chief officer to appear before such court ... to undergo an examination under oath touching his ability and means to satisfy said judgment, and in case of neglect or refusal on the part of such judgment debtor or, in the case of a corporate debtor, its chief officer to obey such order, such court is hereby authorized to issue a writ of attachment against said debtor, as now provided by law, and to punish him or, in the case of a corporate debtor, its chief officer for contempt.

Rule 76.27 states: "When an execution is returned unsatisfied the judgment creditor may petition the court which rendered the judgment to enter an order requiring the judgment debtor to appear and be examined under oath concerning his means of satisfying the judgment."

In *State ex rel. Rowland Group, Inc. v. Koehr,* 831 S.W.2d 930, 932 (Mo.1992) (en banc), the Supreme Court of Missouri stated that:

The judgment debtor examination is a supplementary proceeding, summary in nature.... The principal purpose of a judgment debtor examination is to discover assets, to compel the defendant in the execution to disclose under oath all the assets of his estate, and, after this discovery, to

authorize the court to say whether or not the debtor has assets that may be levied on by execution in favor of the judgment creditor.... A related purpose is to disclose fraudulently concealed property to that it may properly be subjected to the payment of a just debt.

Here, the defendants failed to appear at the debtor examinations. McDowell contends that the Federal Rules of Bankruptcy Procedure, the jurisdictional provisions of the United States Code, bankruptcy case law, logic, and sound public policy establish that the Court has nationwide jurisdiction to enforce a debtor examination order in aid of execution on a preference judgment. McDowell argues that compelling the out-of-state judgment debtors to appear in the United States Bankruptcy Court for the Western District of Missouri would not offend any jurisdictional or forum-related statute.

McDowell moves the Court to exercise its civil contempt power to coerce compliance with the debtor examination orders. McDowell argues that the Court possesses contempt power to coerce compliance with its orders, such as debtor examination orders, for the benefit of interested parties, and that the exercise of this power to coerce compliance with a court order is even more compelling when compliance with the order is necessary to the enforcement or collection of a judgment rendered by the Court. McDowell asserts that the Court's contempt power arises from Mo.Rev.Stat. § 513.380 (1994) and 11 U.S.C. § 105(a).

McDowell requests that the Court order the chief officer of each judgment debtor who failed to appear at the debtor examination to show cause why he or she should not be cited with contempt. Then, if the chief officer fails to make such a showing, McDowell further requests that the Court issue a writ of body attachment directing the United States Marshals Service to arrest the respective chief officers and confine them to prison until each is ready to purge the contempt by complying with the debtor examination orders.

█ There is no question that the Court had subject matter jurisdiction to issue the debtor examination orders and had personal jurisdiction over the out-of-state defendants.

The Court's subject matter jurisdiction initially arose out of the preference actions, which were core proceedings pursuant to 28 U.S.C. § 157(b)(2)(F). The debtor examination orders issued by the Court in aid of execution fell within the Court's ancillary subject matter jurisdiction. "Within a federal court's ancillary jurisdiction is the power to conduct proceedings necessary to protect and give effect to its judgments." *Sandlin v. Corporate Interiors, Inc.*, 972 F.2d 1212, 1216 (10th Cir.1992). "Actions are said to be ancillary to an original suit when brought in aid of an execution or to effectuate a judgment entered in the prior suit. They are in effect a continuance of the original suit." *Jones v. National Bank of Commerce*, 157 F.2d 214, 215 (8th Cir.1946). See *In re American Freight Sys., Inc.*, 173 B.R. 739, 742 (Bankr. D.Kan.1994) (bankruptcy court determined that it had ancillary subject matter jurisdiction over judgment debts owed to debtor by out-of-state garnishees); *In re Lawson*, 156 B.R. 43, 46 (9th Cir. BAP 1993). This type of ancillary jurisdiction has been termed "enforcement jurisdiction." *Sandlin*, 972 F.2d at 1216 n. 4. Judicial power would be incomplete without the ability to enforce judgments. *Id.* at 1216.

█ Because the Court had subject matter jurisdiction over the supplementary enforcement proceedings, the methods for service of process permitted by Fed.R.Bankr.P. 7004 applied. See *In re Colonial Realty Co.*, 163 B.R. 431, 432 (Bankr.D.Conn.1994). Rule 7004(d) authorizes nationwide service of process. Rule 7004(b) permits service by first class mail. McDowell mailed the debtor examination orders to each defendant pursuant to Rule 7004. Service pursuant to Rule 7004 gives the bankruptcy court personal jurisdiction over any entity that has minimum contacts with the United States, without regard to the entity's contacts with the state in which the bankruptcy court happens to sit. *American Freight*, 173 B.R. at 741, 743 (Pursuant to Fed.R.Civ.P. 69 and Kansas law, garnishment orders were issued by the bankruptcy court and served on two out-of-state banks as garnishees; court determined that Rule 7004(d) supersedes state procedure for service of process in garnishment proceed-

ing.). This Court has a valid basis upon which to exercise personal jurisdiction over each defendant.

■ It is well established that bankruptcy courts have the authority to exercise civil contempt power. *In re Power Recovery Sys., Inc.,* 950 F.2d 798 (1st Cir.1991); *In re Skinner,* 917 F.2d 444 (10th Cir.1990); *In re Walters,* 868 F.2d 665 (4th Cir.1989). This power is implied under 11 U.S.C. § 105(a), is inherent in all courts, and is expressly provided for in Fed.R.Bankr.P. 9020. *See, e.g., In re Babbidge,* 175 B.R. 708 (Bankr. W.D.Mo.1994); *Kimco Leasing, Inc. v. Knee,* 144 B.R. 1001 (N.D.Ind.1992); *In re Jim Nolker Chevrolet–Buick–Oldsmobile, Inc.,* 121 B.R. 20 (Bankr.W.D.Mo.1990); *In re Galvez,* 119 B.R. 849 (Bankr.M.D.Fla.1990); *In re Lemco Gypsum, Inc.,* 95 B.R. 860 (Bankr.S.D.Ga.1989), *rev'd on other grounds* 910 F.2d 784 (11th Cir.1990); *In re Miller,* 81 B.R. 669 (Bankr.M.D.Fla.1988); *In re Mc-Lean Indus., Inc.,* 68 B.R. 690 (Bankr. S.D.N.Y.1986).

■ Although not directly addressing civil contempt powers, in *In re Ragar,* 3 F.3d 1174 (8th Cir.1993), the Eighth Circuit Court of Appeals held that a bankruptcy court's order holding an attorney in criminal contempt and providing by its own terms that if the attorney filed objections within ten days the order would be reviewed de novo by the district court was authorized by the Bankruptcy Code and did not violate Article III of the Federal Constitution. The Eighth Circuit acknowledged that authority to the contrary existed, *In re Hipp, Inc.,* 895 F.2d 1503 (5th Cir.1990), and *In re Sequoia Auto Brokers Ltd., Inc.,* 827 F.2d 1281 (9th Cir.1987), however, the Court of Appeals determined that the plain meaning of 11 U.S.C. § 105(a) authorized the bankruptcy court's order. *Id.* at 1178–79. The Eighth Circuit further concluded that the bankruptcy court's order comported with the provisions of Fed. R.Bankr.P. 9020. *Id.* at 1179. Finally, the court opined:

> If core proceedings may be assigned to non-Article III judges without offense to the Constitution ... it follows that the same judges have at least the power to recommend to the district courts that persons violating orders ... be held in criminal contempt. Such a conclusion attributes to bankruptcy judges no more of "the judicial power of the United States," Article III, § 1, than does giving them jurisdiction over core proceedings in the first place.

*Id.* at 1180.

Fed.R.Bankr.P. 9020, referred to above, provides in relevant part:

> **(a) CONTEMPT COMMITTED IN PRESENCE OF BANKRUPTCY JUDGE.** Contempt committed in the presence of a bankruptcy judge may be determined summarily by a bankruptcy judge. The order of contempt shall recite the facts and shall be signed by the bankruptcy judge and entered of record.
>
> **(b) OTHER CONTEMPT.** Contempt committed in a case or proceeding pending before a bankruptcy judge, except when determined as provided in subdivision (a) of this rule, may be determined by the bankruptcy judge only after a hearing on notice. The notice shall be in writing, shall state the essential facts constituting the contempt charged and describe the contempt as criminal or civil and shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense.
>
> . . . .
>
> **(c) SERVICE AND EFFECTIVE DATE OF ORDER; REVIEW.** The clerk, shall serve forthwith a copy of the order of contempt on the entity named therein. The order shall be effective 10 days after service of the order and shall have the same force and effect as an order of contempt entered by the district court unless, within the 10 day period, the entity named therein serves and files objections prepared in the manner provided in Rule 9033(b). If timely objections are filed, the order shall be reviewed as provided in Rule 9033.

Here, McDowell has complied with the procedural requirements of Rule 9020. The contempt proceedings arose from the supplementary enforcement proceedings in the preference actions, which were core proceed-

ings, therefore, the Court has the authority and jurisdiction to hear and determine McDowell's request for civil contempt emanating from the violation of the debtor examination orders. *See Skinner,* 917 F.2d at 448 ("Civil contempt proceedings arising out of core matters are themselves core matters."); *Babbidge,* 175 B.R. 708, 716 ("[I]n a core proceeding [the bankruptcy court] has statutory authority to hear and determine a request for civil contempt emanating from the violation of one of its orders."); *In re Spanish River Plaza Realty Co., Ltd.,* 155 B.R. 249, 251 (Bankr.S.D.Fla.1993) (The bankruptcy court has jurisdiction to enter contempt orders in a contempt proceeding that arises from a core matter under 28 U.S.C. § 157(b)); *McLean Indus.,* 68 B.R. at 695 (" 'Civil contempt proceedings are considered to be a part of the action from which they stem.' " [quoting 4 C. Wright & A. Miller, *Federal Practice & Procedure* § 1017, at 89 (1969 & Supp.1984) ] ). Further, *Ragar* supports the proposition that a bankruptcy court may exercise its contempt power when the contempt matter is a non-core proceeding. *Ragar,* 3 F.3d at 1178 n. 3.

■ "Civil contempt is a remedial sanction and is designed to obtain compliance with court orders or to compensate for damages resulting from non-compliance." *Spanish River,* 155 B.R. at 253. A civil contempt order is coercive in nature and is fashioned in a way that is contingent on compliance with the order. *McLean Indus.,* 68 B.R. at 695. Compliance is "often accomplished by a purgation provision, whereby a civil contemnor may purge himself of contempt at any time by compliance." *Id.* This purge mechanism distinguishes civil from criminal contempt. *United States v. Ayer,* 866 F.2d 571, 573–74 (2d Cir.1989).

■ The court is given broad discretion in fashioning a remedy for civil contempt. *CBS Inc. v. Pennsylvania Record Outlet, Inc.,* 598 F.Supp. 1549, 1557 (W.D.Pa.1984). In this case, McDowell requests that the Court direct the United States Marshals Service to arrest the chief officers of each defendant and confine them to prison until each chief officer is ready to purge the contempt by complying with the debtor examination or-

der. By order dated August 15, 1984, the United States District Court for the Western District of Missouri referred to the bankruptcy judges of this district all cases under Title 11 and all proceedings arising under Title 11 or arising in or related to cases under Title 11. The referral contains no prohibition on the power of a bankruptcy judge to punish contempt by imprisonment. *Compare Skinner,* 917 F.2d at 448 & n. 4 (referral from district court expressly provided that the reference did not include the power to punish a contempt, whether criminal or civil, by imprisonment).

■ If the purpose of imprisonment is to coerce compliance with court orders, the sanction is one for civil contempt. *In re Maxair Aircraft Corp. of Ga., Inc.,* 148 B.R. 353, 359 (M.D.Ga.1992). In this case the Court has the power to impose incarceration as a sanction for civil contempt. *See Spanish River,* 155 B.R. at 254; *Maxair Aircraft,* 148 B.R. at 359; *In re Duggan,* 133 B.R. 671, 673–74 (Bankr.D.Mass.1991). The incarceration imposed for civil contempt cannot be for a fixed term, but must be conditioned upon compliance with the court's orders thereby allowing the contemnor to purge itself of the contempt and the incarceration by compliance. In such instance, the contemnor is said to " 'possess the keys to the jailhouse.' " *Spanish River,* 155 B.R. at 254 (quoting *Shillitani v. U.S.,* 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966)).

"To support a finding of contempt, the moving party must establish that an order of the court was in effect, the defendant knew of the order, and the defendant failed to comply with the order." *Kimco Leasing,* 144 B.R. at 1009. "Before a party can be held in contempt for violating a court order, he must have *actual knowledge* of the order." *Hazen v. Reagen,* 16 F.3d 921, 924 (8th Cir.1994) (Emphasis added.).

■ The moving party must prove civil contempt by clear and convincing evidence. *Hazen,* 16 F.3d at 925; *Spanish River,* 155 B.R. at 253. "It is well established that contempt is a drastic remedy which should be invoked only when the right to use it is clear." *In re Bicoastal Corp.,* 129 B.R. 283,

284–85 (Bankr.M.D.Fla.1991). "Civil contempt 'is a severe remedy, and should not be resorted to where there is a fair ground of doubt as to the wrongfulness of defendant's conduct.'" *MAC Corp. of Am. v. Williams Patent Crusher & Pulverizer Co.,* 767 F.2d 882, 885 (Fed.Cir.1985) (quoting *California Artificial Stone Paving Co. v. Molitor,* 113 U.S. 609, 618, 5 S.Ct. 618, 622, 28 L.Ed. 1106 (1885)).

■ Here, McDowell has failed to prove by clear and convincing evidence that the defendants, particularly the defendants' chief officers whom McDowell seeks to incarcerate, had actual knowledge of the debtor examination orders. Although service by first class mail pursuant to Rule 7004 satisfies the requirement of personal jurisdiction over each defendant, it is not sufficient to establish actual notice of the debtor examination orders in this case. If the defendants had been personally served with the orders, the Court could presume actual notice. *See In re Bennett,* 41 B.R. 958, 961 (E.D.Wis.1984).

■ The Court determines that a fair ground of doubt exists surrounding the defendants' failure to comply with the debtor examination orders thereby preventing the imposition of civil contempt sanctions. Further, the Court has an extreme reluctance to impose such extreme sanctions for what is basically a failure to pay a debt. Such use of the Court's contempt power smacks too much of debtors' prison and too little of the spirit of the Bankruptcy Act. If these defendants have assets, transcribe the judgments and pursue the assets where they exist. The Court denies McDowell's motion for order to show cause why defendants should not be held in contempt.

*Payment of $750 by each defendant*

■ McDowell requests that the Court order each defendant to pay $750 to the bankruptcy estate to compensate the estate for its loss in being required to enforce the Court's debtor examination orders. This figure appears to be arbitrary and the Court can only speculate that the estate seeks to recover attorney's fees expended in litigating the contempt proceedings. McDowell has failed to provide the Court with evidence to support the requested sum. McDowell's request is denied.

### CONCLUSION

Based on the above discussion, McDowell's motion for turnover of property of the estate under 11 U.S.C. § 542(b) is DISMISSED and McDowell's motion for order to show cause why defendants should not be held in contempt is DENIED. McDowell's request that the Court order each defendant to pay $750 to the bankruptcy estate is DENIED.

The foregoing Memorandum Order constitutes Findings of Fact and Conclusions of Law as required by Fed.R.Bankr.P. 7052.

So ORDERED.