In re SPANISH RIVER PLAZA
REALTY COMPANY, LTD.,
Debtor.

Bankruptcy No. 89–33104–BKC–RAM.

United States Bankruptcy Court,
S.D. Florida.

June 11, 1993.

---

Ronald A. Kriss, Valdez, Fauli, Cobb, Bischoff & Kriss, Miami, FL, for New West Sav. & Loan Ass'n.

Daniel L. Bakst, Ackerman, Bakst, Cloyd & Scherer, P.A., West Palm Beach, FL, for Chapter 7 Trustee.

Gary Appel, Denver, CO, for debtor.

Mark Izydore, Jupiter, FL, Robert L. Saylor, Saylor & Gwynn, West Palm Beach, FL, for Schreiber.

Frederick J. Di Spigna, Boca Raton, FL, for Schreiber and Izydore.

## MEMORANDUM DECISION

ROBERT A. MARK, Bankruptcy Judge.

New West Federal Savings and Loan Association ("New West") seeks an order of contempt against the Debtor, Spanish River Plaza Realty Company, Ltd. ("Spanish River"), and two of the Debtor's principals, Harry Schreiber and Mark Izydore. The motion arises from the alleged willful violation of a cash collateral order entered by this Court shortly after the Debtor filed its Chapter 11 petition. For the reasons discussed below, the Court finds that the Debtor, Mr. Schreiber and Mr. Izydore are in civil contempt for willfully violating this Court's cash collateral order.

## JURISDICTION

■ Although there is some disagreement amongst courts that have considered the issue, this Court agrees with those that hold that civil contempt powers are expressly granted to the bankruptcy court by 11 U.S.C. § 105 which authorizes the Court to take any action "necessary or appropriate to enforce or implement court orders ..." *In re Duggan,* 133 B.R. 671 (Bankr. D.Mass.1991) *citing In re Skinner,* 917 F.2d 444 (10th Cir.1990); *In re Walters,* 868 F.2d 665 (4th Cir.1989).

■ Cash collateral orders are core matters under 28 U.S.C. § 157(b)(2)(M). Civil contempt proceedings arising out of core matters are themselves core matters. *In re Skinner,* 917 F.2d at 448. Thus, the Court finds that it has jurisdiction to enter a final contempt order against the respondents.[1]

## PROCEDURAL BACKGROUND

The Debtor, Spanish River Plaza Realty Company, Ltd., (hereafter the "Debtor"), filed its voluntary Chapter 11 petition on June 22, 1989. The next day on June 23, 1989, New West Federal Savings and Loan Association ("New West") filed a Motion for Relief from Automatic Stay or Alternatively for Dismissal and a Motion to Prohibit Use of Cash Collateral and Require Debtor to Segregate and Account for Same. The motion was heard on July 11, 1989 and on July 20, 1989, this Court entered two orders. The first order granted New West relief from stay to pursue its foreclosure action through final judgment.[2] The second order prohibited the Debtor from using cash collateral without the express written approval of New West and required the

Debtor to deposit all cash collateral in its debtor-in-possession account (the "Cash Collateral Order"). It is the Cash Collateral Order, and the flagrant violation of that Order which give rise to the matters before the Court.

On October 24, 1989, the U.S. Trustee moved for the emergency appointment of a Trustee based upon, among other things, the Debtor-in-Possession's failure to comply with the Court's order regarding adequate protection of New West Federal Savings and Loan Association's collateral and the failure to account for receipts. Daniel L. Bakst was appointed Trustee by the Court on November 1, 1989, *nunc pro tunc* to October 31, 1989. On November 22, 1989, this case was converted to one under Chapter 7.

On July 11, 1990, New West filed a Motion for Order to Show Cause Why Spanish River Plaza Realty Company, Ltd. Should Not Be Held in Contempt of Court. On August 17, 1990, the Court entered its Order to Show Cause Why Spanish River Plaza Realty Company, Ltd. Should Not Be Held in Civil Contempt (the "Order to Show Cause"). Further hearings on the Order to Show Cause were held on November 19, 1990, December 4, 1990 and April 29, 1991. A final evidentiary hearing on the matter was held on June 4, 1991.

Prior to the entry of a ruling on May 11, 1992, Schreiber filed a Chapter 7 petition in the United States Bankruptcy Court for the District of Colorado, Case No. 92–15931–SBB. New West moved for stay relief and on July 29, 1992, the Colorado bankruptcy court entered an order granting New West relief from the automatic stay to pursue its motion for contempt.[3]

---

1. Rule 9020, Fed.R.Bankr.P., purports to require review by the district court of bankruptcy court contempt orders pursuant to the procedures in Rule 9033. Since Rule 9033 expressly applies to non core proceedings and since § 105 of the statute provides a clear grant of contempt powers, this Court finds Rule 9020 inapplicable to contempt orders entered in core matters. *In re Duggan,* 133 B.R. at 674.

2. New West has since completed its foreclosure action and on March 9, 1991, with leave of court, conducted a foreclosure sale of its collateral, the Debtor's single significant asset, a shopping center in Boca Raton, Florida. New West was the successful bidder at the foreclosure sale.

3. Schreiber's bankruptcy case was transferred to this district on December 10, 1992 and is now pending in this Court, Case No. 93–30124.

## FINDINGS OF FACT[4]

During such hearings and in orders entered on those hearings the Court made the following factual findings, which remain the findings of this Court:

1. The Cash Collateral Order entered by the late Honorable Thomas C. Britton prohibited the Debtor herein, Spanish River, from using any of the cash collateral, including all rents and proceeds, without the express written consent of New West.

2. Mark Izydore ("Izydore"), was an officer of one of the Debtor's general partners, was present in the courtroom at the time the July 20, 1989 Order was granted and was expressly admonished by Judge Britton that he was not to use the cash collateral.

3. Harry Schreiber ("Schreiber") is a general partner of the Debtor.

4. After July 20, 1989, Spanish River has used cash collateral without the express written approval of New West by writing unauthorized checks on the debtor-in-possession account shortly before the case was converted.

5. A number of unauthorized checks bear the signature stamp or signature of Schreiber.

6. Izydore satisfies the identity test requirements set forth in *Thompson v. Johnson*, 410 F.Supp. 633 (E.D.Pa. 1976), for holding non-parties in contempt for violation of a court order.

7. Schreiber is also within the class of persons who can be found in contempt for violating the Cash Collateral Order in that he is a general partner of the debtor and it appears that a number of the unauthorized checks bear the signature stamp or signature of Schreiber.

8. Izydore willfully violated the Court's July 20, 1989 Cash Collateral Order.

9. Izydore's testimony regarding the circumstances surrounding the issuance of checks to the Debtor's affiliates, Pro Management and Consulting Corp. ("Pro Management"), was not credible.

10. Izydore knew that the money was being removed from the Debtor's debtor-in-possession account in violation of the Cash Collateral Order and was being transferred to affiliated entities.

The Court, having heard the testimony of the witnesses and observing their demeanor, viewing the evidence submitted by the parties, makes the following additional findings of fact.

The Debtor is a limited partnership whose single asset at the time these bankruptcy proceedings were commenced was a shopping plaza located in Boca Raton, Florida. The Debtor's two general partners were Schreiber and Atlantic Management and Consulting Corp. ("Atlantic"). Atlantic is a corporation that was 100% owned by Schreiber at the time these proceedings were commenced. (See Debtor's disclosure statement page 2 filed August 22, 1989). At all relevant times, Izydore was vice president of Atlantic and represented himself to be managing agent of the Debtor.

From the filing of the voluntary bankruptcy petition through the appointment of the Trustee, Daniel Bakst, the affairs of the Debtor were controlled by Izydore acting under the express direction of Schreiber.

On four occasions from June 22, 1989 through October 1989, Izydore and Schreiber issued or caused to be issued checks drawn on the debtor-in-possession account payable to Pro Management.[5] These checks totalled in excess of $59,000. Pro Management is a corporation wholly owned by Schreiber's wife and controlled by Schreiber. (Plaintiff's Exhibit 9, pages

---

4. The Court's findings have been established by clear and convincing evidence.

5. A fifth check was written on the debtor-in-possession account in favor of Pro Management. However, this check was returned for improper endorsement. (Plaintiff's December 4, 1990 Exhibit 12, Check 118)

29).[6] One of the checks written to Pro Management was endorsed by Schreiber and made payable to Westminister Management Corp. (Plaintiff's December 4, 1990 Exhibit 12, Check 108). Westminister Management Corp. is an affiliate of Pro Management and is owned and controlled by Schreiber or his wife. (Plaintiff's Exhibit 9, page 29).

A substantial percentage of all money spent by Pro Management during the period in question was either paid to or for the benefit of Schreiber or Schreiber's wife or to one or more affiliated entities owned or controlled by Schreiber. These included checks written directly to Schreiber's wife ($15,093.00); checks payable to cash ($29,-357.97), payments on numerous credit cards (many bearing notations for Schreiber, Schreiber's wife or Izydore) ($27,-491.66), and (4) to affiliates, Westminister Management Company and Westminister Financial Corp. ($48,500.00). (Plaintiff's Exhibit 13). These affiliates likewise issued several checks to each other.

Pro Management's accounts were used for numerous personal items such as payment of the mortgage on Schreiber's personal residences, (Plaintiff's Exhibit 10, pages 87, 99, 109), payment for pool service, (Plaintiff's Exhibit 13), repayment of personal loans, (Plaintiff's Exhibit 10, pages 92, 105), lease payments on Schreiber's Mercedes Benz automobiles (Plaintiff's Exhibit 10, pages 97, 108, 113), and child care for Schreiber's son. (Plaintiff's Exhibit 10, pages 83, 102). Neither the Debtor, Izydore or Schreiber presented credible evidence to refute the benefits derived by Schreiber from Pro Management payments funded at least, in part, by the cash collateral improperly paid by the Debtor.

## CONCLUSIONS OF LAW

■ A party seeking a civil contempt order must prove by clear and convincing evidence that the respondents have violated a court order. *CFTC v. Wellington Precious Metals, Inc.,* 950 F.2d 1525 (11th

Cir.1992). Intent is not an element of civil contempt. *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949); *In re Walters,* 868 F.2d 665, 668 (4th Cir.1989).

■ Civil contempt is a remedial sanction and is designed to obtain compliance with court orders or to compensate for damages resulting from non-compliance. *See Piambino v. Bestline Products, Inc.,* 645 F.Supp. 1210, 1212 (S.D.Fla.1986). Contempt is an appropriate means of redressing cash collateral violations. *See generally, In re Krisle,* 54 B.R. 330, 338 (Bankr.D.S.D.1985) (civil contempt found where debtor violated provisions of 11 U.S.C. § 363 and failed to comply with order requiring turnover of cash collateral wrongfully withdrawn).

■ This Court has previously determined that Izydore willfully violated the Cash Collateral Order, diverting funds from the debtor-in-possession account to affiliated entities. The Court also found that Izydore's testimony concerning the diversion of funds was not credible. Izydore contends that he cannot be required to pay a compensatory fine because he did not personally benefit from his contemptuous conduct. The Court disagrees. There is no requirement that a party personally benefit from his contempt before a court can impose a compensatory fine or coerce compliance with the court's orders. Izydore has cited no case law to the contrary. Further, the Court finds that Izydore did benefit from his violation of the Cash Collateral Order. This benefit included the payment of his personal Visa credit card bill as well as paying the lease on his Mercedes Benz. (Plaintiff's Exhibit 10, pages 112, 257, 272) Moreover, as an employee of Schreiber or Schreiber controlled entities during the time funds were diverted, Izydore received a salary from the recipients of the diverted funds and may be found to have derived other indirect benefits from Schreiber.

---

**6.** Unless otherwise indicated, all exhibit references are to exhibits introduced into evidence at the June 4, 1991 Final Evidentiary Hearing.

The evidence submitted to the Court also demonstrates that Schreiber knowingly and willfully violated the Cash Collateral Order. *General Motors Corp. v. Gibson Chemical & Oil Corp.*, 627 F.Supp. 678 (E.D.N.Y. 1986) (knowledge of a party in contempt is knowledge of the existence of the order, not knowledge of particulars of the order); *In re Damon*, 40 B.R. 367 (Bankr.S.D.N.Y. 1984) (order given in open court in presence of representative of law firm sought to be adjudicated in civil contempt established knowledge of the order). Schreiber was a general partner of the Debtor. All diverted funds were transferred to a company, wholly owned by Schreiber's wife and controlled by Schreiber. As set forth above, it is evident that Schreiber personally benefitted from the diversion.

Like Izydore's testimony, Schreiber's testimony is not credible. The evidence demonstrates that Schreiber has been involved in numerous bankruptcies and thus, he is well aware of restrictions regarding the use of a secured party's cash collateral. Schreiber should be aware that misappropriation of a secured party's cash collateral in a bankruptcy case violates the provisions of 11 U.S.C. § 363 as well as the provisions of a cash collateral order.

■ Among the remedies available to the Court in a civil contempt proceeding is the ability to impose a fine payable to the complainant in compensation for damages sustained as a result of the contumacious conduct. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949); *U.S. v. Mine Workers of America*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *Blackmer v. U.S.*, 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375 (1932). *See also Vuitton et Fils, S.A. v. Carousel Handbags*, 592 F.2d 126 (2d Cir.1979) (once the complainant proves that damages have occurred as the result of the contumacious behavior, the Court has no discretion and must order that compensatory damages be paid); *Parker v. U.S.*, 153 F.2d 66 (1st Cir.1946).

■ Moreover, the Court has the authority to incarcerate contemnors who fail to pay court imposed fines or otherwise comply with the Court's orders. *CFTC v. Wellington Precious Metals, Inc.*, 950 F.2d at 1529; *In re Duggan*, 133 B.R. 671 (Bankr.D.Mass.1991). *See also, e.g., Phoenix Marine Enterprises, Inc. v. One (1) Hylas 46' Convertible Sportfisherman Hull #1*, 681 F.Supp. 1523 (S.D.Fla.1988) (court ordered incarceration in civil contempt proceeding until contempt purged or orders complied with); *In re Krisle*, 54 B.R. 330, 338 (Bankr.D.S.D.1985) (incarceration ordered in civil contempt proceedings where debtor wrongfully withdrew cash collateral from debtor-in-possession account and failed to comply with court order requiring turnover of cash proceeds wrongfully withdrawn). Such incarceration does not change a civil contempt proceeding to a criminal one so long as such incarceration is limited in that the contemnors are released upon payment of the fine or upon a showing that they are financially unable to pay the fine. In such instances the intent of incarceration is remedial, not penal, and the contemnors are said to "possess the keys to the jailhouse." *Shillitani v. U.S.*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966); *United States Steel Corp. v. United Mine Workers of America*, 393 F.Supp. 942 (W.D.Pa.1975). If the contemnor makes a clear showing that he is unable to comply with the Court's requirement, then imprisonment cannot continue. It is the contemnor that has the burden of producing evidence that it is factually impossible for him to comply with the contempt order. *CFTC v. Wellington*, 950 F.2d at 1529; *U.S. v. International Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO*, 899 F.2d 143 (2d Cir.1990).

In the *Wellington* case, the Eleventh Circuit of Appeals held that even lengthy incarceration was permissible as a coercive remedy for civil contempt. In that case, appellant Weiss was found guilty of fraudulent securities sales and ordered to disgorge $2.8 million. When he failed to pay, the district court held him in contempt and ordered him to pay five percent immediately or face incarceration. Weiss again failed to pay and on April 24, 1990, the

Court ordered him jailed. In July of that year, the district court denied Weiss' motion to terminate the contempt finding insufficient proof that Weiss was unable to pay the judgment. Even though 18 additional months passed before the Eleventh Circuit issued its opinion, the appellate court affirmed and thus continued the incarceration. "Prison time, in and of itself, will not satisfy Weiss' burden of proving that there exists no realistic possibility that he can comply with the court's contempt order." 950 F.2d at 1531.

 In this case, the Court has gone to great lengths to clarify what evidence it expected Izydore and Schreiber to supply, in support of their contention that they are financially unable to return the monies wrongfully diverted. This Court's Order Setting Further Discovery on Order to Show Cause and Granting Additional Relief dated December 13, 1990 required the Debtor, (through Izydore and Schreiber), to provide bank statements and financial statements for various affiliated entities, as well as for Schreiber and Izydore, individually. Those financial statements were to be "prepared in good faith and with sufficient detail and adequate notes and disclosure as to provide meaningful information to the Court and the parties as to the financial condition of the persons and entities listed." Likewise, at the hearing on December 4, 1990, the Court quoted at length from the Eleventh Circuit's decision in *Combs v. Ryan Coal Company, Inc.*, 785 F.2d 970 (11th Cir.1986), to inform the Debtor, Schreiber, and Izydore of the type of information which they must supply and of the consequences for failure to provide this information, including possible incarceration.

The financial statements supplied by Schreiber and Izydore and the affiliated entities fail to comply with this Court's Order which required a good faith attempt to produce financial statements. Schreiber and Izydore failed to produce any financial statements for New West in direct violation of the Court's December 13th Order. Further, the statements produced for Schreiber, Izydore and the other affiliates contain obvious deficiencies, including missing notes referenced by the statements, as well as other information which is necessary in order to determine the statements themselves clearly indicate would be necessary to render the statements not misleading.

In addition to these deficiencies, the evidence indicates that, in the case or Schreiber and Izydore, certain assets may have been omitted from the statements. These assets include stock owned by Schreiber and Izydore in AME Factoring, which in turn owns the stock of Citation Industries, Inc. ("Citation"). (Plaintiff's Exhibit 6, p. 26) Citation is a debtor before this Court: Case No. 90–33076–BKC–RAM. Furthermore, the lack of information contained in the statements, including the lack of notes and disclosures, and the absence of credible support for any of the valuations contained therein indicates that good faith was not used in the preparation of these documents.

This Court finds Schreiber and Izydore have not established an inability to pay. In this regard, the Court notes that other than providing the bare financial statements, Izydore and Schreiber have provided no evidence that they have taken all reasonable steps and used utmost diligence to return the diverted funds. *Phoenix Marine Enterprises, Inc. v. One (1) Hylas 46' Convertible Sportfisherman Hull # 1*, 681 F.Supp. 1523 (S.D.Fla.1988) (defendant's inability defense rejected where defendant testified he had not sought to sell his house or land, settle or sell a pending lawsuit or vessel to satisfy the court's order in part or in whole); *Piambino v. Bestline Products, Inc.*, 645 F.Supp. 1210, 1213 (S.D.Fla.1986) (defendant's defense of inability to pay rejected where inability was of their own making, and where one defendant failed to liquidate the value in his home, liquidate investments, including a Keogh plan, and sell law books and office equipment). In fact, the evidence shows that Schreiber had substantial funds available at the time he claimed an inability to pay. (Plaintiff's Exhibit 11).

Based upon the foregoing, the Court finds the Debtor, Spanish River Plaza Real-

ty Company, Ltd., by and through its authorized agents Schreiber and Izydore, are in civil contempt for violating this Court's Cash Collateral Order.

## REMEDY

If not for the passage of time and intervening bankruptcy petition filed by Mr. Schreiber, the remedy would be clear—Schreiber and Izydore would be required to promptly pay to New West the monies illegally diverted failing which the Court would direct the United States Marshal to take into custody and incarcerate Schreiber and Izydore until such time as they paid in order to purge the contempt or provide substantial and credible evidence of their inability to do so. The purge amount would be the sum of $59,902.34, plus interest thereon from October 16, 1989 through the date of this Order at the rate of 12% per annum, together with fees and costs incurred by New West in connection with the contempt proceedings in the amount of $5,000.

Because of the length of time that this matter has been pending and because Mr. Schreiber is presently a Debtor in a Chapter 7 case in this court, the Court finds that a further hearing is necessary before imposing these or other sanctions for the contempt. Therefore, by separate order, the Court will schedule a hearing to consider further relief. At the hearing, the Court will consider whether monetary sanctions against Mr. Schreiber should be treated as a claim in his bankruptcy case, (with an opportunity for New West to file an adversary complaint seeking exception to the dischargeability of the debt) or whether the sanctions may be enforced as a post petition obligation. In addition, the Court will give Mr. Schreiber and Mr. Izydore a further and final opportunity to present evidence establishing their inability to pay the amounts necessary to purge the contempt.