In re IONOSPHERE CLUBS, INC., Eastern Air Lines, Inc., and Bar Harbor Airways, Inc. d/b/a Eastern Express, Debtors.

Richard C. BARTEL, Appellant,

v.

Martin R. SHUGRUE, Jr., as Trustee of the Estate of Eastern Air Lines, Inc., Appellee.

No. 94 Civ. 0659 (MBM).

United States District Court, S.D. New York.

July 28, 1994.

Richard C. Bartel, pro se.

Daniel J. King, King & Spalding, New York City, for trustee.

## OPINION AND ORDER

MUKASEY, District Judge.

This is a motion by appellant Richard C. Bartel to withdraw the reference of the captioned case to the Bankruptcy Court insofar as it involves an application to hold him in contempt. Bartel has also moved to strike as untimely the responses by the Trustee for Eastern Airlines, Inc. to his papers. For the reasons summarized below, both the motion to withdraw and the motion to strike are denied.

### I.

In or about April 1992 Bartel filed proofs of claim in the bankruptcy of Continental Airlines, Inc. and related entities, purporting to assert such claims in behalf not only of himself but also of Eastern Airlines, Inc. and related entities, and seeking a 2% fee for any recovery he might secure. On December 6,

1993, Eastern's Trustee moved before the Bankruptcy Court for an order finding Bartel in contempt for purporting to assert claims that belonged to Eastern when he was not authorized to do so, and thereby to control property of Eastern in violation of the automatic stay provisions of § 362(a) of the Bankruptcy Code. The Bankruptcy Court set January 4, 1994 as the date for the hearing on that motion.

Bartel did not appear at the hearing. Instead, and apparently before the hearing, he filed a motion to withdraw the reference. This court did not act on that motion before the hearing date. Upon Bartel's default, the Bankruptcy Court entered an order finding Bartel in contempt, fixing a monetary sanction in the amount of $3500 to compensate the Trustee for the cost of prosecuting the motion, and fixing a sanction of $750 per day for each day that Bartel fails to withdraw his purported claims in behalf of Eastern and related entities filed in the Continental bankruptcy case. Thereafter, Bartel filed an amended motion to withdraw the reference. He has also moved to strike as untimely the Trustee's response to his motions. In addition, Bartel filed in the Bankruptcy Court on January 18, 1994 a document styled "Objections to an Order of Contempt dated January 5, 1994 Pursuant to Bankruptcy Rule 9020(c), and Protective Notice of Appeal."

## II.

■ The Trustee has argued that Bartel's motion to withdraw may be denied as untimely or moot, either because he did not file it in this court until after the hearing was held or because, regardless of when he filed it, the hearing proceeded to conclusion. The relevant statute, 28 U.S.C. § 157(d), permits a district court to withdraw a case, in whole or in part, from the bankruptcy court, "on its own motion or on timely motion of any party, for cause shown." However, to deny the motion for untimeliness or mootness would mean simply that Bartel would be relegated to pursuing an appeal where he would raise precisely the arguments he now raises as part of his motion, which arguments the Trustee has been put to the trouble of responding to. Moreover, as noted above, Bar-

tel has filed in the Bankruptcy Court a notice of appeal from the contempt order. Accordingly, Bartel's arguments will be dealt with insofar as they are made in support of a motion to withdraw the reference. To the extent he has any remaining ground for appeal not dealt with herein, there will be no bar to his pursuit of such an appeal should he consider it worthwhile to do so. Any argument dealt with herein may be treated as *res judicata* or simply adopted by this or any other reviewing court.

## III.

Bartel's most current argument appears to be that the Bankruptcy Court has held him in criminal contempt and that it lacks the power to do so. Instead, he asserts, he is entitled to a jury trial for criminal contempt in this court. He has also suggested that the Bankruptcy Court lacks power to adjudicate and penalize civil contempts. Both arguments are without merit, the first because it mischaracterizes what happened in the Bankruptcy Court, the second because it mischaracterizes the law.

The motion for the contempt order before the Bankruptcy Court sought a declaration nullifying Bartel's actions and holding him in contempt, imposition of "a per diem fine upon Bartel for each day he remains in violation of the automatic stay," and an award to the Trustee for "his costs, including reasonable attorneys' fees, in bringing this Motion." (Trustee Motion at 7) The Bankruptcy Court's Order of Contempt, signed January 5, 1994 after the hearing on January 4 that Bartel did not attend, found that he had filed the proofs of claim in the Continental bankruptcy in violation of the automatic stay in the Eastern bankruptcy, that he had actual knowledge of that stay, that he was not authorized to act in Eastern's behalf, that he lacked any good faith argument that his conduct complied with the automatic stay, and that he was therefore in civil contempt "pursuant to Section 105 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9020." (Order of Contempt at 2–3)

The Order then imposed the following "sanctions" upon Bartel:

(a) monetary sanctions in the amount of $3500.00, representing an estimate of the actual costs and expenses incurred by the Trustee in connection with preparing, filing and prosecuting the Motion [for contempt], and

(b) monetary sanctions in an amount equal to $750.00 per day for each day that Bartel fails to withdraw with prejudice the amended Proofs of Claim and the associated Claims (except any claims held by Bartel in his individual capacity as a result of Bartel's participation in the One Pass Program) following the effective date of this Order (as described below).

(Order of Contempt at .4)

■ The monetary sanction of $3500, which Bartel characterizes as a criminal penalty, was in fact simply a recognized variety of civil contempt award. "[S]anctions in civil contempt proceedings may be employed 'for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.'" *Local 28 of the Sheet Metal Workers' Int'l Ass'n v. E.E.O.C.,* 478 U.S. 421, 443, 106 S.Ct. 3019, 3033, 92 L.Ed.2d 344 (1986) (quoting *United States v. United Mine Workers of America,* 330 U.S. 258, 303–04, 67 S.Ct. 677, 701–02, 91 L.Ed. 884 (1947)). Here, the Bankruptcy Court stated that the $3500 award was intended to compensate the Trustee for his expenses and fees in connection with bringing the motion that was necessary in order to bring Bartel into compliance with the automatic stay. Those expenses and fees were an item of loss to the Trustee occasioned by Bartel's behavior.

■ The $750 per day sanction, which I interpret as beginning from the time Bartel received notice of the order, is coercive in character and was designed to compel Bartel to stop violating the automatic stay and to desist from further violations. Once again, the nature of the sanction fits comfortably within the accepted goals and limits of civil contempt.

■ To the extent Bartel is suggesting that a bankruptcy court lacks the power to impose penalties for civil contempt, he is bucking a strong tide of authority flowing against him. Section 105 of the Bankruptcy Code permits a bankruptcy court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Bankruptcy Rule 9020(a) permits summary determination of contempts committed in the presence of the court, and paragraph (b) of the same Rule provides in part:

(b) *Other Contempt.* Contempt committed in a case or proceeding pending before a bankruptcy judge, except where determined as provided in subdivision (a) of this rule, may be determined by the bankruptcy judge only after a hearing on notice.

At least three circuit courts have recognized the power of bankruptcy courts to order sanctions for criminal contempt. *In re Power Recovery Sys., Inc.,* 950 F.2d 798 (1st Cir.1991); *In re Skinner,* 917 F.2d 444 (10th Cir.1990); *In re Walters,* 868 F.2d 665 (4th Cir.1989). That authority has been followed in this District. *In re Stockbridge Funding Corp.,* 145 B.R. 797 (Bankr.S.D.N.Y.1992), *aff'd in relevant part,* 158 B.R. 914 (S.D.N.Y. 1993).

Not surprisingly, Bartel relies on *In re Sequoia Auto Brokers, Ltd.,* 827 F.2d 1281 (9th Cir.1987), the one decision going the other way. *Sequoia,* however, was decided before the effective date of the above quoted revision of Bankruptcy Rule 9020, and has failed to elicit the support of any other circuit. Any authority that decision might otherwise have is undone by the text of Bankruptcy Rule 9020, and I decline to follow it.

■ There appears in Bartel's papers the suggestion that because there was no order relating to the automatic stay, he cannot be held in civil contempt for disobeying the stay. As noted above, the Contempt Order found that Bartel had actual notice of the automatic stay. No more is necessary in order to justify a contempt finding against one disobeying the automatic stay. *Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 52 (2d Cir.1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977).

## IV.

■ Finally, Bartel's motion to strike as "grossly untimely" the Trustee's response to

his motion to withdraw must be denied as well. Counsel for the Trustee has argued that when Bartel did not seek a stay of the hearing in the Bankruptcy Court, counsel believed that Bartel had abandoned the motion because it would make little sense to pursue a motion to withdraw a proceeding that had already taken place. In addition, counsel notes that the Trustee responded promptly after receiving notice that the withdrawal motion had been filed in this court. Further, the Trustee argues that even if Bartel filed the motion in this court before the hearing took place, the finding of contempt mooted the motion. I agree. At any rate, it certainly mooted any claim that the Trustee's response was untimely. Absent any demonstrable prejudice to Bartel, to the extent the Trustee's response to the motion to strike may be read as an application to extend time, that application is granted *nunc pro tunc*, and the motion to strike is denied.

For the above reasons, the motions to withdraw the reference and to strike the Trustee's response are denied.

SO ORDERED.