**In re Max FRANKEL, Debtor.**

**Barbara BALABER–STRAUSS, as Trustee of the Estate of Max Frankel, Plaintiff,**

**v.**

**Joseph MARKOWITZ, Defendant.**

**Bankruptcy No. 93–B–21371 (ASH).
Adv. No. 95–5103A.**

United States Bankruptcy Court,
S.D. New York.

Feb. 8, 1996.

Serchuk & Zelermyer, LLP by Benjamin Zelermyer, Special Litigation Counsel to the Trustee, White Plains, NY, for plaintiff/movant.

Farber, Segall & Pappalardo by Eugene I. Farber, White Plains, NY, for defendant.

ADLAI S. HARDIN, Jr., Bankruptcy Judge.

Plaintiff Barbara Balaber–Strauss, as Trustee of the estate of Max Frankel (the "Trustee"), has moved by notice of motion dated January 3, 1996 for an order holding defendant Joseph Markowitz ("Defendant") in civil contempt for his failure to comply with the final Order and Judgment entered in this matter of November 15, 1995 (the "November 15 Order") and imposing appropriate sanctions on Defendant, including monetary sanctions and incarceration. Defendant has cross-moved by notice dated January 15, 1996 for an order pursuant to Bankruptcy Rule 8005 granting a stay of the November 15 Order.

The background facts are set forth in full in the decision rendered by this Court dated October 16, 1995 (the "October 16 Decision"), to which reference is made. The following summary of facts will suffice for purposes of the instant cross-motions.

On November 17, 1994 the Trustee's auctioneer conducted a public auction of two adjoining pieces of real estate in Spring Valley, New York, one of which is known as 21 Alturas Road (the "Property"). After a competing bid of $250,000, Defendant submitted the winning bid of $275,000 for the Property. Immediately after the auction Defendant and the Trustee executed a memorandum of sale dated November 17, 1994 and Defendant delivered certified checks totalling $28,000 as the required downpayment. On December 14, 1994, without any objection by Defendant, this Court signed an "Order Confirming Sales" pursuant to a November 30, 1994 "Notice of Presentment of Order and of Opportunity to be Heard", which was served upon Defendant.

Defendant has been involved in the real estate business for twenty years or more in various capacities as a principal/investor/manager and for the last five years as a licensed real estate broker, and long prior to November 17, 1994 he had attended other public auctions. He had ample opportunity to evaluate and obtain appraisals of the Property before the auction.

Despite the fact that Defendant took possession of the Property and used it as an office for his real estate business at least until the trial in August 1995, Defendant refused to proceed to a closing or pay the balance of the purchase price ($247,000). On March 30, 1995 the Trustee moved for an order declaring Defendant in default, and Defendant cross-moved to declare the auction null and void and for the return of his deposit. The motion practice was mooted by commencement of this adversary proceeding on May 31.

The adversary proceeding was tried on August 23, 24 and 25, 1995. In its October 16 Decision, the Court rejected Defendant's proffered grounds for breaching his obligation to purchase the Property as, in substance, pretextual and sham. The November 15 Order conforms to the Court's October 16 Decision, except that Defendant was taxed with only a fraction of the Trustee's legal costs.

The November 15 Order, *inter alia*, granted specific performance and required Defendant and the Trustee to close the transaction within thirty days from the date of entry of the Order, *i.e.*, December 15. On November 27 Defendant filed a notice of appeal. But Defendant did not move for a stay pending appeal under Bankruptcy Rule 8005 until January 15, 1996, in response to the Trustee's motion for contempt.

The Trustee seeks not only monetary sanctions but also incarceration, arguing that since Defendant has now violated two court orders, one of which imposed monetary sanctions, "[t]here is no reason to expect that monetary sanctions would cause Markowitz to start obeying court orders" (Trustee's Memo. at 6). Defendant argues in point of fact that he is not financially capable of complying with the Court's November 15 Order of specific performance. Legally, Defendant argues that he should not be held in con-

tempt (i) because he has diligently attempted to comply with the Court's November 15 Order and (ii) because "the bankruptcy court in the instant case may lack the authority to hold Joseph Markowitz in contempt" (Defendant's Memo. at 5).

Defendant's affidavit on this motion sworn to January 15, 1996 is the first utterance by Defendant or by his counsel raising any question as to Defendant's financial capacity to honor his contractual and Court-ordered obligation to purchase the Property. It conflicts markedly with his prior statements. On February 3, 1995, Defendant's then and present lawyer, Eugene I. Farber, Esq., with the knowledge and at the request of Defendant, wrote to the Trustee stating, *inter alia:*

> I am advised by Mr. Markowitz that he has obtained a verbal commitment from Green Point Savings Bank which informed him that the written commitment should be available by the end of next week. The commitment is for $125,000.00 and Mr. Markowitz has access to the balance of the funds necessary to close his acquisition of the subject property.

> \* \* \* \* \* \*

> In short, Mr. Markowitz is ready, willing, and able to proceed to closing.

After commencement of this adversary proceeding, in which the Trustee has sought specific performance from the outset, Defendant testified under oath that he had the financial resources to purchase the Property. At his deposition Defendant testified:

Q. What funds were available to you?

A. I have an equity line of credit. I don't—I mean I can always get money whenever I want. I have no problem getting money if I need.

Q. What funds did you have access to at that time?

A. I don't recall at this moment. I have to look through my records.

Q. What records?

A. To see where I could acquire it. I have brothers I can get money, I can get money from organizations, I have equity loans and I have other places where I can always get as much money as I want. (Depo.Tr. at page 76)

At the trial Defendant testified:

Q And after Greenpoint Savings Bank offered you $125,000 you told Mr. Farber to go ahead and send a letter to the Trustee telling her that you had enough additional money [to] close. Isn't that right?

A Yes.

Q In fact, you could have closed with less than that; couldn't you?

MR. FARBER: At which time, Your Honor.

MR. ZELERMYER: At any time after November 17, 1994.

A I mean I can't recall now what happened then.

Q Can't you get as much money as you want, Mr. Markowitz?

A Yes; I can.

Q So you could have closed with even less than that?

A Yes. (Trial Tr. at pp. 61–62)

Despite these sworn statements in this very proceeding, Defendant now asserts in a conclusory affidavit that he does not personally have the resources to comply with his obligations and that for reasons unexplained none of the sources from which he expected to obtain the necessary funds is presently available to him. Defendant did not provide any documents concerning his own financial resources, nor any affidavit or evidence from the Green Point Savings Bank, or from any other prospective source of funding, nor did Defendant present himself in Court on the return date of these cross-motions to testify under oath and on cross-examination.

It is on this record that Defendant asks the Court to deny the Trustee's motion for sanctions and to grant a stay pending appeal. The problem is that no interpretation of this record is supportive of conclusions favorable to Defendant. He alone knew his financial resources and the funds which might be available to him from different sources. On the one hand, if Defendant did not have funds available to purchase the Property when he outbid his competitors at the November 17, 1994 auction and signed the mem-

orandum of sale, or when he instructed his attorney to write the February 3, 1995 letter representing that he had obtained financing from Green Point Savings Bank and was "ready, willing and able" to purchase the Property, and if he testified falsely in his deposition and at trial that "I can always get money whenever I want. I have no problem getting money if I need.... I can always get as much money as I want", then undoubtedly Defendant has not acted in good faith and merits a contempt citation. If, on the other hand, Defendant in fact acted honestly and in good faith on November 17, 1994, and when he instructed his attorney to write the February 3, 1995 letter, and when he testified in his deposition and at trial in this proceeding, then his January 15, 1996 affidavit is patently insufficient to explain his defiance of the November 15 Order.

Defendant does not claim that there has been any diminution in the value of the Property, or that he has suffered financial reverses, and no explanation whatever has been offered for Defendant's inability to obtain funds from Green Point Savings Bank or from his brothers or whatever sources he was referring to when he testified under oath "I can always get money whenever I want". The only perceivable explanation for Defendant's sudden financial impotence is the intuitively obvious fact that a party seeking to evade an obligation to buy property can quite easily make himself an unacceptable borrower for any lender.

There is one other element in the factual matrix which must inform this Court's response to the pending cross-motions, and that is the situation now faced by the Trustee as the representative of the Debtor's estate in this case and the creditors whose interests are here at stake. There is no question that the Trustee has been seriously damaged by the conduct of this Defendant. But for Defendant's bid the Property would have been sold to the $250,000 bidder and closed presumably in January 1995. Had Defendant timely disclosed that he was unwilling or financially incapable of purchasing the Property, the Trustee would have declared Defendant in default, sold the Property to someone else in February or March 1995 and pursued a damage remedy against Defendant. But Defendant, through his counsel, insisted that he was "ready, willing and able" to buy the Property, and he continued to physically occupy and use the Property at least until trial. And when the Trustee finally commenced litigation, Defendant (i) took the position that the Trustee's damage remedy was limited to his $28,000 deposit as liquidated damages, (ii) asserted disputed factual contentions in support of his claim to void the auction and recover his deposit (which required a trial either in a contested matter or in an adversary proceeding) and (iii) continued to maintain throughout this proceeding, until his January 15, 1996 affidavit, that he had the financial resources to buy the Property. This litigation to rebut Defendant's attempt to void the auction and to establish the Trustee's rights has cost the estate tens of thousands of dollars in legal fees which this Court chose not to impose on Defendant because of the financial burden on Defendant, notwithstanding the Court's October 16 Decision. In addition, the estate is damaged by the ongoing legal costs in this adversary proceeding and by the carrying costs of the Property and interest on the purchase price since January 1995. Also of great concern to the Court are the risks of loss on resale of the Property, whether on the open market or at auction, referred to in the paragraph of text containing footnote 3 of the Court's October 16 Decision.

### Governing Legal Standards

#### Criteria for Contempt

 Turning to Defendant's legal arguments, there is no question that a party should not be sanctioned for contempt where he has made a genuine, good faith effort to comply with a court order and failed to do so through no fault of his own. *In re Stockbridge Funding Corp.*, 145 B.R. 797 (Bankr. S.D.N.Y.1992), *vacated in part on other grounds*, 158 B.R. 914 (S.D.N.Y.1993). As stated by Defendant, the standard for finding a party in civil contempt was set forth in *New York State National Organization for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir.1989), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990), where the Court of Appeals stated:

A court's inherent power to hold a party in civil contempt may be exercised only when (1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of non-compliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply. [citations omitted]

■ Applying these standards here, there is no question that elements (1) and (2) are met. The November 15 Order requiring specific performance and a closing by December 15, 1995 is clear and unambiguous. There is no dispute that Defendant did not comply with the November 15 Order and did not seek a stay of that Order pending appeal. Element (3) presents a more difficult question, because Defendant asserts in his January 15, 1996 affidavit that he does not have the personal means to fulfill his obligation to purchase the Property and that he contacted various potential sources of financing to no avail. Even without the factual background here present, Defendant's conclusory affidavit, unsubstantiated by any evidence and unsupported by any objective, explanatory facts, would be unsatisfactory, since an unwilling borrower/purchaser obviously will have no difficulty in being turned down for a loan from any source.

The circumstances here underscore the inadequacy of Defendant's submission. This was not an obligation imposed upon Defendant against his will, but the consequence of his voluntary, successful bid at a competitive public auction. The terms of sale read in a loud voice by the auctioneer immediately prior to the auction included the following:

**PURCHASER IS RESPONSIBLE FOR OBTAINING OWN FINANCING.... WARNING! DO NOT BID ON THESE PROPERTIES IF YOU DO NOT POSSESS THE NECESSARY AMOUNT OF MONIES TO CLOSE. THE SALES ARE NOT CONTINGENT UPON FINANCING.**

Defendant conceded in writing through his attorney that he had financing for $125,000 from Green Point Savings Bank and that he was "ready, willing and able to close". He has never suggested and even now does not assert that his refusal to purchase the Prop-

erty in the spring of 1995 was due to lack of financial resources—his financial inability postdates the November 15 Order. Defendant's January 15, 1996 affidavit does not mention Green Point Savings Bank, or explain why that Bank or any other commercial bank would not make a loan for $125,000 (representing only 45% of the value represented by Defendant's bid). Nor does his January 15 affidavit provide any explanation for the mysterious disappearance of all those alternate sources of financing which were the basis for Defendant's statements under oath in this proceeding that "I can always get as much money as I want".

### Burden of Proof

■ Defendant's argument (Memo. at 8) that the burden is on the Trustee "to prove that Markowitz has not made reasonable efforts to comply with the Court's Order" is mistaken. The case relied upon, *In re Mayex II Corp.*, 178 B.R. 464 (Bankr.W.D.Mo. 1995), states that the moving party "must prove civil contempt by clear and convincing evidence", 178 B.R. at 470. It is certainly the Trustee's burden to prove Defendant's contempt, but Defendant's contempt (failure to comply with two Orders of this Court) is undisputed. Once the breach of a court order has been demonstrated, the burden must shift to the breaching party to establish as an affirmative defense that he was incapable of compliance, through no fault of his own and despite diligent efforts to comply. The burden is on "the alleged contemnor [to] clearly establish[ ] his inability to comply with the terms of the order." *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir.1995). To the same effect, *see In re Spanish River Plaza Realty Co., Ltd.*, 155 B.R. 249, 254 (Bankr.S.D.Fla.1993) ("It is the contemnor that has the burden of producing evidence that it is factually impossible for him to comply with the contempt order"). *See also Phoenix Marine Enterprises, Inc. v. One (1) Hylas, 46' Convertible Sportfisherman Hull # 1*, 681 F.Supp. 1523, 1529 (S.D.Fla.), *aff'd*, 846 F.2d 753 (11th Cir.1988) ("the respondent must go beyond a bald assertion of inability and satisfy his burden by introducing evidence in support of his claim"). The Court of Appeals decision in *Huber v. Marine Mid-*

*land Bank, supra,* is instructive on Defendant's burden in this case:

> [A] party's complete inability, due to poverty or insolvency, to comply with an order to pay court-imposed monetary sanctions is a defense to a charge of civil contempt....

> The alleged contemnor bears the burden of producing evidence of his inability to comply.... Conclusory statements are inadequate to carry this burden....

> Further, the alleged contemnor's burden is to establish his inability clearly, plainly, and unmistakably....

> As the above authorities establish, there is no requirement that the ability to pay be clearly established; what is required is that the inability to pay be clearly established by the alleged contemnor. (51 F.3d at 10; citations omitted)

Faced with a motion to hold him in contempt of two Orders of this Court and for incarceration, and given a hearing and ample opportunity to present evidence and argument, Defendant has failed to sustain his burden.

It follows from the foregoing that the standards set by the Second Circuit for a finding of contempt have been met in this case and that Defendant has not sustained his burden of demonstrating that he was incapable of complying with the Court's Order. I conclude that Defendant's failure to comply with the November 15 Order constituted a contempt of court.

**Power of the Bankruptcy Court**

█ Relying on the Fifth Circuit decision in *Plastiras v. Idell (In re Sequoia Auto Brokers, Ltd.),* 827 F.2d 1281 (9th Cir.1987), Defendant asserts that "the federal courts are in serious disagreement regarding the power of a Bankruptcy judge to punish a party for contempt" (Defendant's Memo. at 2).[1] This Court will follow Judge Mukasey's decision in *Bartel v. Shugrue (In re Ionosphere Clubs, Inc.),* 171 B.R. 18, 21 (S.D.N.Y. 1994), where the Court stated:

To the extent Bartel [the alleged contemnor] is suggesting that a bankruptcy court lacks the power to impose penalties for civil contempt, he is bucking a strong tide of authority flowing against him. Section 105 of the Bankruptcy Code permits a bankruptcy court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Bankruptcy Rule 9020(a) permits summary determination of contempts committed in the presence of the court, and paragraph (b) of the same Rule provides in part:

> (b) *Other Contempt.* Contempt committed in a case or proceeding pending before a bankruptcy judge, except where determined as provided in subdivision (a) of this rule, may be determined by the bankruptcy judge only after a hearing on notice.

> * * * * * *

Not surprisingly, Bartel relies on *In re Sequoia Auto Brokers, Ltd.,* 827 F.2d 1281 (9th Cir.1987), the one decision going the other way. *Sequoia,* however, was decided before the effective date of the above quoted revision of Bankruptcy Rule 9020, and has failed to elicit the support of any other circuit. Any authority that decision might otherwise have is undone by the text of Bankruptcy Rule 9020, and I decline to follow it.

*See also Mayex II v. Du–An Products, Inc. (In re Mayex II Corp.),* 178 B.R. 464, 469 (Bankr.W.D.Mo.1995) ("It is well established that bankruptcy courts have the authority to exercise civil contempt power"); *In re Power Recovery Systems, Inc.,* 950 F.2d 798, 802 (1st Cir.1991) ("Bankruptcy Rule 9020(b) specifically provides that a bankruptcy court may issue an order of contempt if proper notice of the procedures are given"); *In re Walters,* 868 F.2d 665, 669, 670, 670 (4th Cir.1989) ("we are of the opinion the delegation of civil contempt power to the bankruptcy courts by 11 U.S.C. § 105(a) does not offend the Constitution as in violation of separation of powers"); *In re Babbidge,* 175

---

1. Defendant's citation of *Griffith v. Oles (Matter of Hipp),* 895 F.2d 1503 (5th Cir.1990), concerning *criminal* contempt, is not germane.

B.R. 708, 716–717 (Bankr.W.D.Mo.1994) ("the court finds that in a core proceeding it has statutory authority to hear and determine a request for civil contempt emanating from the violation of one of its orders ... [the bankruptcy court] has an inherent power to enforce its own orders through civil contempt"); *Kimco Leasing, Inc. v. Knee*, 144 B.R. 1001, 1008 (N.D.Ind.1992) ("this court finds that the bankruptcy court had jurisdiction over the question of civil contempt posed in response to the filing of a post-discharge lawsuit given the injunction provisions of 11 U.S.C. § 524"); *In re Galvez*, 119 B.R. 849, 849 (Bankr.M.D.Fla.1990) ("It has been generally recognized that bankruptcy courts have inherent contempt power to enforce compliance with their lawful judicial orders"); *In re Miller*, 81 B.R. 669, 676 (Bankr. M.D.Fla.1988) ("all courts, whether created pursuant to Article I or Article III of the Constitution, do have inherent civil contempt power to enforce compliance with their lawful judicial orders, and no specific statute is required to invest a court with civil contempt power"); *In re McLean Industries, Inc.*, 68 B.R. 690, 695 (Bankr.S.D.N.Y.1986) ("The duty of any court to hear and resolve legal disputes carries with it the power to enforce the order").

### Stay Pending Appeal

 Bankruptcy Rule 8005 gives this Court the authority to stay the November 15 Order pending Defendant's appeal. It is well settled that a party seeking a stay pending appeal must demonstrate:

(1) the strong likelihood of success on the merits of the appeal;

(2) that the movant will suffer irreparable injury if the stay is denied;

(3) that no substantial harm will be suffered by the other parties if the stay is granted; and

(4) that no harm to the public interest, if it is implicated, will be caused by granting the stay.

*Green Point Bank v. Treston*, 188 B.R. 9, 11 (S.D.N.Y.1995); *In re Advanced Mining Systems, Inc.*, 173 B.R. 467, 468 (S.D.N.Y. 1994); *In re de Kleinman*, 150 B.R. 524, 528 (Bankr.S.D.N.Y.1992); *In re Sphere Holding*

*Corp.*, 162 B.R. 639, 642 (E.D.N.Y.1994); *In re Liggett*, 118 B.R. 219, 221 (Bankr.S.D.N.Y. 1990). The moving party must show " 'satisfactory' evidence on all four criteria." *In re Charles & Lillian Brown's Hotel, Inc.*, 93 B.R. 49, 53 (Bankr.S.D.N.Y.1988) citing *In re Smoldt*, 68 B.R. 533, 535 (Bankr.N.D.Iowa 1986). "[Movant's] failure to satisfy one prong of the standard for granting a stay pending appeal dooms his motion". *Green Point v. Treston*, 188 B.R. at 12; *see also In re de Kleinman*, 150 B.R. at 528.

Turning to element (1), the Trustee is correct in arguing that Defendant has made no meaningful showing of "likelihood of success on the merits" of his appeal on his cross-motion for a stay. Bland assertions that "the District Court might disagree with [this Court's] conclusion on any one of the following grounds" do not constitute a demonstration of likelihood of success. Considering the evidence and the arguments made by Defendant at the trial, it does not appear to this Court that the issues determined in the Court's October 16 Decision present close questions of fact or law.

 With respect to element (2), Defendant argues that "there is no greater irreparable injury than the prospect of being faced with contempt, a fine, and incarceration" (Memo. at 12). In so doing, Defendant conflates the standards for contempt with the standards for a stay pending appeal. The issue on a motion for a stay is whether compliance with the order sought to be stayed would result in irreparable injury, not whether sanctions imposed for a contempt of court would cause irreparable injury. Indeed, a motion to stay an order is supposed to be brought *before* the party seeking the stay has put himself in contempt by failing to comply with it. The conscientious appellant who timely moves for a stay is not confronted with the prospect of sanctions for contempt and thus cannot argue the prospect of incarceration as irreparable harm justifying a stay. It would surely be anomalous to permit the contumacious appellant to satisfy the irreparable injury component by pointing to the consequences of his own contempt, while denying a stay to his conscientious counter-

part who applied for the stay timely so as not to be in contempt.

In this case, compliance with the Court's November 15 Order would require Defendant to purchase the Property as he agreed to do on November 17, 1994. The Trustee argues that compliance with a contractual obligation cannot constitute irreparable injury, which is true, but only up to a point. Compliance could be said to cause irreparable injury, for example, if it would effectively moot the appeal, as in a case where the transaction could not be undone if the party seeking the stay were ultimately to prevail on appeal. Such is not the case here. The Trustee could be required to hold the sale proceeds in escrow pending the outcome of the appeal, so that the parties could be put back in the *status quo ante* in the event Defendant prevails.

With respect to element (3), it is obviously imperative for the Trustee and the estate to seek compliance with the November 15 Order as promptly as possible. Continuing delay increases the costs and risks to the estate, as described above.

With regard to element (4), the public policy concerns articulated in the October 16 Decision relate to the merits, not to the question of stay pending appeal. The Trustee correctly points out that there are public policy implications involved in the question of compliance with and enforcement of orders of this or any other court, but those issues relate to the matter of sanctions, not stay. I conclude that no consideration of public policy would bar a stay pending appeal in this case.

### Relief

As demonstrated above, the Trustee has established the requisite elements for a contempt citation for Defendant's violation of this Court's November 15 Order, and also the Court's December 14, 1994 Order confirming the auction sale. Defendant has not sustained his burden of showing that he made diligent efforts to comply with the Court Orders and was incapable of doing so

for reasons beyond his control. Nor has Defendant sustained his burden of establishing the four elements required for a stay pending appeal. The Court must now determine what sanctions are appropriate under the circumstances to achieve the objectives of the bankruptcy laws.

■ Sanctions for civil contempt serve the objectives of compensating a party for damages resulting from the contempt and coercing compliance with orders of the Court. *In re Stone*, 166 B.R. 269, 275 (Bankr.W.D.Pa.1994) ("civil contempt sanctions are meant to coerce or to compensate; criminal contempt sanctions to punish"); *McDonald's Corp. v. Victory Investments*, 727 F.2d 82, 87 (3d Cir.1984) ("civil contempt may be employed to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience"); *Latrobe Steel Co. v. United Steelworkers*, 545 F.2d 1336, 1343 (3d Cir. 1976).[2]

■ Monetary sanctions are appropriate here to reimburse the Trustee and the estate for the legal costs of the Trustee's instant motion. The order implementing this decision (the "implementing order") will so provide and will require the Trustee's counsel to apply promptly for an allowance of the legal costs to be awarded as sanctions.

■ In certain cases the imposition of a daily fine pending compliance may be an effective means of bringing the offending party's contumacy to an end. In this case, however, monetary sanctions do not appear to be appropriate as a means to induce compliance, or to protect the interests of the debtor's estate which the Court Orders in question were designed to serve. Defendant has already violated two Orders of this Court entailing financial obligations, one of which imposed sanctions. Moreover, a contempt sanction increasing the financial burden on Defendant appears counterproductive when Defendant now claims, albeit without substantiation, that he does not have the financial means to comply with the Court's latest

---

**2.** The objectives of punishing contemnors, deterring future violations and protecting the integrity of the judicial process are the province of criminal contempt not within the scope of this Court's jurisdiction on this motion.

Order. In view of the Defendant's conduct in breaching his contractual and Court-ordered obligation to purchase the Property, defending his breach on grounds found by the Court to be pretextual and sham, violating the Court's November 15 Order and opposing this motion on grounds which are wholly unsubstantiated and which conflict with his prior sworn testimony in this proceeding, the Court concludes that incarceration is the only sanction which is appropriate in the circumstances and which is likely to serve the interests of the debtor's estate. *See, In re Mayex II Corp.*, 178 B.R. at 470 ("In this case the court has the power to impose incarceration as a sanction for civil contempt").

In opposing this motion Defendant has made two requests which must now be considered. In connection with his cross-motion for a stay Defendant has suggested that he post a bond, albeit in an amount, $10,000, which bears no relation to the potential damage and risk to the Trustee as a consequence of Defendant's conduct. The second request is that Defendant, a licensed real estate broker who is active in and highly knowledgeable concerning the market in which the Property must be sold, be permitted to market the Property as a broker in the hopes of finding a purchaser and mitigating or eliminating his potential financial exposure in this case. Defendant emphasized that he has the keenest incentive to market the Property at the highest possible price, and he would do so with no expectation of a commission or other remuneration. The Trustee's counsel had no objection to this request. The Court concludes that the interests of both the Defendant and the estate would be served by adopting both of these suggestions, in modified form.

Upon receipt of this decision, Defendant will be permitted to commence such efforts as he deems appropriate to market the Property, subject to prior approval of the Trustee, with any disputes to be resolved expeditiously by the Court by conference call, if possible, or on papers if necessary. Any sale will be subject to Court approval. The implementing order will provide for the foregoing.

Defendant's cross-motion for a stay pending appeal will be denied, and the Trustee's motion to hold Defendant in contempt will be granted. Sanctions will consist of (1) a monetary award to reimburse the Trustee for the full legal costs of the Trustee's motion and (2) incarceration conditioned upon full compliance with the November 15 Order, to commence 14 days after the date of entry of the implementing order.

■ However, the implementing order will also provide that Defendant shall not be incarcerated if within 14 days of the date of entry of the order Defendant posts a bond in the sum of $125,000 which, together with the $28,000 deposit, will be held to secure payment of all of Defendant's financial obligations to the Trustee under the November 15 Order and the implementing order, and to secure the Trustee against the full amount of loss which may be suffered by the Trustee measured by the difference between Defendant's $275,000 purchase price and the ultimate sale price of the Property. The amount of the bond, $125,000, with the $28,000 deposit, is designed to provide the Trustee with a "cushion" of approximately $100,000 if the Property eventually is sold to another buyer for less than Defendant's purchase price, assuming that the various costs and interest provided for under the November 15 Order and the implementing order may total some $50,000 or more. Both payment under and discharge of the bond will be subject to the further order of this Court. Posting of the bond will purge Defendant's contempt, and at Defendant's election the bond may stand in lieu of Defendant's obligation of specific performance under the November 15 Order.[3]

The foregoing disposition of the cross-motions is designed to serve the interests of both parties, and the 14 days will allow ample time (effectively, three weeks from the date

---

3. Defendant has argued (without citation of authority) that the $28,000 deposit constituted "liquidated damages" capping his exposure to liability for damages at law. If this is so, as stated in the October 16 Decision it is this Court's view that the Trustee does not have an adequate remedy at law and, accordingly, that the equitable remedy of specific performance is essential to protect the estate. *See, Rubinstein v. Rubinstein*, 23 N.Y.2d 293, 297–98, 244 N.E.2d 49, 296 N.Y.S.2d 354 (N.Y., 1978) ("The law is now well settled that a liquidated damages provision will not in and of itself be construed as barring the remedy of specific performance"); *Papa Gino's*

of this decision) for Defendant, if so advised, to arrange for a bond, and also to make an appropriate submission to the District Court despite the denial of his motion for a stay.

Within three days of the date hereof, the Trustee will settle the implementing order consistent with this decision on four days' notice to Defendant. The order will specify the conditions of the bond. If Defendant objects to the proposed order, counsel will be heard in open court at 10:00 a.m. on the settlement date.

of America v. *Plaza at Latham Associates*, 135 A.D.2d 74, 76, 524 N.Y.S.2d 536 (N.Y.A.D., 3rd Dep't 1988) ("It is well established that a liqui-dated damage clause ... does not bar the equita-ble relief of specific performance unless there is explicit language that liquidated damages are to be the sole remedy for the breach"); *Barclay Arms Assocs. v. Clemente*, 98 A.D.2d 892, 893, 470 N.Y.S.2d 881 (N.Y.A.D., 3rd Dep't 1983) (same); *Morgan and Brother Manhattan Storage Company, Inc. v. Balin*, 47 A.D.2d 85, 89, 364 N.Y.S.2d 904, 907 (N.Y.A.D., 1st Dep't 1975), *aff'd*, 39 N.Y.2d 848, 386 N.Y.S.2d 100, 351 N.E.2d 748 (1976) (same); *see also, Kilsheimer v. Rose & Moskowitz*, 257 F.2d 242, 245 (2d Cir. 1958) ("The *Restatement of the Law, Contracts*,

section 378 provides 'The fact that a contract contains a provision for the payment of a penalty or liquidated damages for breach of a promise is not a bar to the specific performance of the promise'"). The provision for a bond does not constitute a damage remedy for the Trustee at odds with the liquidated damages rule relied on by Defendant. It is intended to provide Defen-dant, *at his election*, with (i) a means of avoiding incarceration for his contempt of court, and (ii) an alternate means of discharging his obligation of specific performance under the November 15 Order, while at the same time preserving to the extent of the bond the economic consequence of the equitable relief provided to the Trustee under the November 15 Order.